**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| VERNON W. HILL, II,  BRIAN TIERNEY, and BARRY SPEVAK, derivatively on behalf of REPUBLIC FIRST BANCORP INC.,<br><br>              Plaintiffs,<br><br>      v.<br><br>ANDREW B. COHEN, LISA JACOBS, HARRY MADONNA, and HARRIS WILDSTEIN,<br><br>              Defendants,<br><br>     and<br><br>REPUBLIC FIRST BANCORP INC.,<br><br>              Nominal Defendant. | CIVIL ACTION NO. _____ |

**VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**
**AND ACTION FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF**

COME NOW Plaintiffs Vernon W. Hill, II,  Brian Tierney, and Barry Spevak (together, "**Plaintiffs**"), all of whom are shareholders and directors of Derivative Plaintiff and Nominal Defendant, Republic First Bancorp, Inc. ("**FRBK**"), a Pennsylvania corporation, and hereby submit their Verified Shareholder Derivative Complaint and Action for Declaratory Judgment and Injunctive Relief on behalf of FRBK against Defendants Andrew B. Cohen, Lisa Jacobs, Harry Madonna, and Harris Wildstein (together, "**Defendants**" or the "**Madonna Faction**"), showing the Court as follows:

**NATURE OF THE ACTION**

1.      The Madonna Faction – a faction of FRBK's Board of Directors ("**Board**") consisting of FRBK's former (and disgruntled) CEO and founder, Harry Madonna ("**Mr.**

**Madonna**"), his personal lawyer, Lisa Jacobs ("**Ms. Jacobs**"), and fellow co-defendants and co-conspirators Andrew B. Cohen ("**Mr. Cohen**") and Harris Wildstein ("**Mr. Wildstein**") – have waged a campaign to seize control of FRBK's Board so that they can sell or refinance FRBK at any price and on any terms to their benefit and that of their allies but to the detriment of the vast majority of FRBK's shareholders.

2.      For months, Plaintiffs Vernon W. Hill, II ("**Mr. Hill**"),  Brian Tierney ("**Mr. Tierney**"), and Barry Spevak ("**Mr. Spevak**") have vigorously opposed the Madonna Faction's self-interested machinations.  Plaintiffs were joined in their opposition to the Madonna Faction by fellow Board member Theodore Flocco, Jr. ("**Mr. Flocco**") until Mr. Flocco's untimely death last week.

3.      Immediately after learning of Mr. Flocco's passing, the Madonna Faction kicked their coup attempt into high gear.  Within hours of his death, the Madonna Faction announced his passing in numerous channels (and prior to any public dissemination by FRBK, which in and of itself has serious federal securities laws implications) and started convening meetings at which they have purported to conduct critical Board business without the requisite quorum of directors – including, among other things, purporting to remove Mr. Hill from his role as Chairman of the Board and replace him with Mr. Madonna.

4.      Mr. Madonna's current employment agreement with FRBK, a 2021 Amended and Restated Employment Agreement (the "**Employment Agreement**"), gives him a powerful incentive to sell FRBK, as it provides that Mr. Madonna "shall be entitled to a Transaction Bonus" of no less than one million dollars "in the event a 'merger or sale or transfer of a majority of the stock of the Bank or Company' is consummated." Employment Agreement, § 3(d).  Mr. Madonna will only get that bonus, however, if FRBK enters into an agreement to sell majority control.  *Id.*

at § 4. The only way Mr. Madonna can ensure that FRBK enters into such an agreement to sell majority control is by ensuring that the Madonna Faction takes control of the Board.

5.    Ms. Jacobs is Mr. Madonna's long-time personal attorney and is expected to remain aligned with him (as she has been at all relevant times) in order to preserve their attorney-client economic relationship.

6.    Mr. Wildstein founded FRBK with Mr. Madonna and remains loyal to him.

7.    Mr. Cohen works for hedge fund billionaire Steven A. Cohen ("**Steven Cohen**"). (The two Messrs. Cohen are not related.)  Steven Cohen and Mr. Cohen, best known for their run-ins with the United States Department of Justice and the Securities and Exchange Commission (the "**SEC**") for insider trading and sharp and questionable business practices, are supporting the Madonna Faction's coup attempt with money, lawyers, and public relations backing.

8.    In their quest to seize control and monetize their FRBK stock, the Madonna Faction has made common cause with activist hedge fund Driver Management Company LLC ("**Driver**") and George Norcross ("**Norcross**"). The Madonna Faction has intentionally kneecapped the management and Board functions at FRBK, made unfounded and knowingly false public accusations of misconduct against the Plaintiffs (who are up for re-election at the next FRBK shareholders' meeting) that violate federal proxy solicitation rules, and have hindered FRBK's ability to defend against coordinated lawsuits initiated by Driver and Norcross based on the Madonna Faction's false statements.

9.    Immediately following Mr. Flocco's untimely death last week, the Madonna Faction has hijacked FRBK's press and disclosure functions and have purported to take positions and speak on behalf of FRBK and its Board without the proper authority and without a Board quorum.  They have also hijacked FRBK's finances and resources to discredit FRBK's nominated

slate of Board director candidates - consisting of Mr. Hill and Mr. Spevak – in anticipation of the director election that is to take place at a forthcoming shareholder annual meeting (a meeting which has been indeterminately delayed as a direct result of the Madonna Faction's knowingly false statements and related actions).  Notably, this is the same slate of director candidates that the entire Board – including the Madonna Faction – had previously approved.

10.     The Madonna Faction continues to forge ahead with their plans to cement their control of the Board and implement their scheme to enrich themselves at the expense of FRBK shareholders' long term interests.  In particular, they are now working with Driver to add Driver-endorsed directors to FRBK's Board (including one who works for and is beholden to Mr. Cohen) and then orchestrate a one-sided takeover of the bank by Norcross – a take-over that provides no benefit to FRBK's shareholders and significantly undervalues FRBK, but would trigger Mr. Madonna's million dollar payout and permit Mr. Madonna, the Madonna Faction, and their allies to sell some or all of their stock at a price that may be advantageous to their personal interests, but is not advantageous to FRBK's shareholders, generally.  They seek this sale, even though they know the current market for the sale of banks is depressed and they would be sacrificing the long-term upside of the bank's shareholders for the Madonna Faction members' personal short-term benefit.

11.     FRBK's Board is deadlocked. Given the untimely passing of a Board member last week and the current standoff between Plaintiffs and the Madonna Faction, the Board is unable to transact Board business pursuant to FRBK's Amended and Restated By-Laws (the "**By-Laws**") and FRBK's corporate governance obligations.  Until that deadlock is broken, presumably by the shareholders through their voting in a new slate of directors in a fair election, the Madonna Faction must not be permitted to speak on behalf of FRBK's Board or transact business, use FRBK's

resources to discredit Plaintiffs or Plaintiffs' efforts to wage a lawful and legal proxy fight, or use FRBK's resources to give an unfair advantage to the competing slate of board candidates that Driver has proposed and the Madonna Faction now supports.

12.     Through this action, Plaintiffs seek: (i) temporary, preliminary and permanent declaratory and injunctive relief prohibiting the Madonna Faction from purporting to transact Board business, or speak or act on behalf of the Board or FRBK, absent approval by a majority of Board members voting at a properly noticed Board meeting at which the requisite quorum is in attendance pursuant to FRBK's By-Laws; (ii) temporary, preliminary and permanent declaratory and injunctive relief prohibiting the Madonna Faction from co-opting FRBK's finances or resources to advantage themselves and their allies in an ongoing proxy dispute and Board election as well as violating proxy solicitation laws; and (iii) the appointment of a neutral custodian pursuant to 15 Pa. C.S. § 1767(a)(3) to oversee the Board's conduct of business given the Madonna Faction's self-interested conduct and clear abrogation of their fiduciary duties.

13.     Further harm is both imminent and immediate as the Madonna Faction has called for other Board meetings to occur later today and tomorrow during which, it is expected, they will completely oust Mr. Hill from FRBK and the Board and fully commit FRBK to both violate the law and deprive FRBK's shareholders of their rights.

## THE PARTIES

14.     Plaintiff Mr. Hill is FRBK's Chief Executive Officer.  He is currently a director of FRBK and has served as a director since December 2016.  Mr. Hill was previously the founder and chairman of another retail bank headquartered in metro Philadelphia, Commerce Bank, N.A., which grew to 450 locations along the east coast before its sale in 2007.

15.     Plaintiff Mr. Tierney has been a director of FRBK since September 2011.  He is

currently a member of the nominating committee.  Mr. Tierney was formerly the publisher of the Philadelphia Inquirer and Daily News and was CEO of their parent company, Philadelphia Media Holdings LLC.  Mr. Tierney previously served as Chairman and CEO of Tierney Holdings LLC, a private investment firm.

16.     Plaintiff Mr. Spevak has been a director of the FRBK since April 2004.  He is currently the chairman of the compensation committee of the FRBK Board and a member of the Board's audit committee and nominating committee.  Mr. Spevak has been a partner with Downey, Spevak and Associates, Ltd., a certified public accounting firm, since 1991.

17.     Together with the now-vacant seat that was held by Mr. Flocco until his death last week, Plaintiffs constitute half of the current FRBK Board.

18.     Defendant Mr. Cohen has been a director of FRBK since June 2017.  Mr.  Cohen is the Co-founder and Managing Director of Cohen Private Ventures, LLC, an investment management firm which provides long-term capital funding, primarily through direct private investments and other opportunistic transactions.  He also serves as the Chief Investment Officer of Point72 Asset Management, L.P., a hedge fund founded by billionaire Steven Cohen.

19.     Defendant Ms. Jacobs has been a director of FRBK since 2017. Ms. Jacobs is currently a partner at the law firm of Stradley Ronon Stevens & Young LLP and was previously a partner at the law firm of DLA Piper.

20.     Defendant Mr. Madonna has been a director of FRBK since 1988.  Mr. Madonna founded FRBK in 1987.  He currently serves as the president and chairman emeritus of the Board of FRBK.

21.     Defendant Harris Wildstein has been a director of FRBK since 1988.

22.     Nominal defendant FRBK was organized and incorporated under the laws of the

Commonwealth of Pennsylvania in 1987.  FRBK is the holding company for Republic Bank – the operational arm of FRBK (the "**Bank**").  FRBK's principal place of business is in Philadelphia, Pennsylvania.

## JURISDICTION AND VENUE

23.     The claims asserted herein arise under Section 14(a) of the Exchange Act, 15 U.S.C. §78n(a), and the rules and regulations promulgated thereunder, including SEC Rule 14a-9, 17 C.F.R. 12 §240.14a-9. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, Section 27 of the Exchange Act, 15 U.S.C. §78aa, and 28 U.S.C. § 2201.

24.     Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. § 1391(b). FRBK is incorporated in this District, and many of the acts and much of the conduct that constitute the violations of law complained of herein occurred in this District. In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mail, interstate telephone communications and the facilities of the national securities markets.

## FACTUAL BACKGROUND

**A.     FRBK, the Board, and FRBK's Corporate By-Laws.**

25.     FRBK is listed on NASDAQ under the ticker "FRBK."  As of market close on May 13, 2022, FRBK had a market capitalization of approximately $254.97 million.[1]

26.     FRBK's By-Laws provide that: "[e]xcept as otherwise provided in the Corporation's Articles of Incorporation, the business and affairs of [FRBK] shall be managed under the direction of the Board[]. All powers of [FRBK] may be exercised by or under authority

---

[1] NASDAQ, *Republic First Bancorp, Inc. Common Stock*, WWW.NASDAQ.COM, https://www.nasdaq.com/market-activity/stocks/frbk (last visited May 15, 2022).

of the Board [] except as conferred on or reserved to the shareholders by law, by [FRBK's] Articles of lncorporation or by these By-Laws."  By-Laws, Article II, § 1.

27.    FRBK's Board consists of eight Board of Director positions divided into Class I (2 directors), Class II (3 directors), and Class III (3 directors).  Each class of directors serves a three-year term.

28.    Specifically, the By-Laws provide that:

> The number of directors shall be fixed from time to time by resolution of the Board of Directors adopted by a majority of the directors then in office; provided, however, that the number of directors shall in no event be fewer than five (5) nor more than twenty-five (25). The Board of Directors shall be divided into three classes as nearly equal as possible. The members of each class shall be elected for a term of three years and until their successors are elected and qualified.  One class shall be elected by ballot annually.

By-Laws, Article II, § 2.

29.    By resolution dated June 27, 2017, the Board fixed the number of Board directors at eight.  *See* June 27, 2017 Minutes of the Board of Directors Meeting.

30.    Pursuant to FRBK's By-Laws (and in addition to statutory and common law), each director owes fiduciary duties to FRBK.  The By-Laws provide that:

> [a] director shall stand in a fiduciary relation to the corporation and shall perform his or her duties as a director, including duties as a member of any committee of the board upon which the director may serve, in good faith, in a manner the director reasonably believes to be in the best interests of the corporation and with such care, including reasonable inquiry, skill and diligence, as a person of ordinary prudence would use under similar circumstances.

By-Laws, Art. II, § 3.

31.    Until May 10, 2022, the eight members of FRBK's Board were the three Plaintiffs, the four Madonna Faction Defendants, and Mr. Flocco.

32.    Mr. Flocco served as a director of FRBK from June 2008 until his untimely passing on May 10, 2020.  He was chairperson of the audit committee and a member of the compensation

committee.  Mr. Flocco's support for Mr. Hill and the other Plaintiffs in opposing the Madonna Faction's attempt to take over the Board and sell FRBK to suit their own interests was unwavering up to the time of his death.

**B.     Mr. Madonna's Mismanagement of FRBK Precipitates and Necessitates Mr. Hill's Rise to The Leadership of FRBK.**

33.     Mr. Madonna founded FRBK in Pennsylvania in 1987. Mr. Madonna was named chairman of the Board of FRBK in 1988, and chief executive officer of FRBK in 2001.

34.     Under Mr. Madonna's leadership, FRBK's annual average common share price plummeted from $13.66 a share in 2006 to $7.03 a share in 2008.[2]  FRBK's market capitalization dropped 41.7% from approximately $120 million in 2006 to approximately $70 million in 2007.[3] And net income in 2008 was negative $472,000. *See* FRBK's March 16, 2010 Form 10-K Filing.

35.     Mr. Madonna was simply failing in his role.  The Bank was suffering from serious capital problems; it was engaged in questionable practices such as payday lending, and was severely mismanaged from the executives to tellers. Those issues led the Board to seek Mr. Hill's guidance and expertise.  Indeed, it was Mr. Madonna who sought out and retained Mr. Hill's leadership and banking acumen to right the ship.

36.     In 2008, FRBK hired Mr. Hill as a financial and strategic consultant to FRBK. Thereafter, given FRBK's below average financial performance, Mr. Hill worked to shift FRBK's business strategy towards a retail banking focus with an emphasis on enhancing the customer experience.

37.     FRBK's management team, advised by Mr. Hill, developed a business strategy

---

[2]  Macrotrends, *Republic First Bancorp - 27 Year Stock Price History*, WWW.MACROTRENDS.COM, https://www.macrotrends.net/stocks/charts/FRBK/republic-first-bancorp/stock-price-history (last visited May 15, 2022).
[3]  *Market capitalization of Republic First Bancorp (FRBK)*, WWW.COMPANIESMARKETCAP.COM, https://companiesmarketcap.com/republic-first-bancorp/marketcap/ (last visited May 15, 2022).

focused on: "providing attentive personalized service and capitalizing market dynamics to differentiate FRBK as a consumer friendly alternative to the larger banks with whom [FRBK] competes." *See* FRBK's March 16, 2020 Form 10-K Filing, at pp. 5–6.  Over time, it became clear that Mr. Hill – given his successful track record and banking acumen – had become the de facto leader of FRBK and its strategy.

38.     Under Mr. Hill's guidance, FRBK increased deposits, reduced its loan-to-deposit ratio, and maintained strong liquidity and reserve ratios while also aggressively managing its asset quality.  Among more everyday changes, FRBK ensured that the Bank stores would be open seven days a week save federal holidays with extended lobby and drive-thru hours, providing customers with the longest hours of any bank in the area. FRBK would also offer absolutely free checking, free coin counting, ATM/Debit cards issued on the spot and access to more than 55,000 surcharge free ATMs worldwide.

39.     With the foregoing changes implemented, Mr. Madonna, Mr. Hill, and the then-FRBK Board approved an expansion strategy termed "The Power of Red is Back."  To support that growth strategy, FRBK completed a $45 million sale of common stock through a private placement offering in April 2014.  By 2016, two years into that growth strategy, FRBK had added seven locations, with a total of four planned for 2016 and six for 2017.  Regarding the plan, Mr. Madonna was quoted in 2016 as saying "[w]e have a five-year plan that includes reaching 40 branches [via organic growth] . . . [w]e have adopted the Commerce model and people have shown they still like it."[4]

40.     In 2016, Mr. Madonna voluntarily stepped down as chairman of FRBK's Board to allow Mr. Hill to take over the position.  *See* FRBK's December 5, 2016 Press Release attached

---

[4] Jeff Blumenthal, *Bank using Vernon Hill to advertise customer-friendly model in South Jersey*, PHILA. BUS. J. Oct. 19, 2016.

FRBK's Form 8-K SEC Filing on December 5, 2016. Mr. Madonna said the following about the transition: "I think it's a great idea, . . . I want the bank to be associated with Vernon Hill. He has a proven track record of success and our investors like him and his model works. We were oversubscribed in raising $100 million and some of that has to do with Vernon."[5]

41.     Since Mr. Hill's involvement, FRBK has grown from $700 million to $5.6 billion in assets and increased its number of retail branches to thirty-three.[6]  Prior to the events giving rise to this action, FRBK possessed total assets of approximately $5.1 billion, total shareholders' equity of approximately $308.1 million, total deposits of approximately $4 billion, net loans receivable of approximately $2.6 billion, and net income of $5.1 million with net income of $4.1 million available to common shareholders. *See* FRBK's March 11, 2021 Form 10-K Filing.

42.     On March 18, 2022, Mr. Hill was ranked in the top 12% of the "NASDAQ CEO Scorecard" for net profit growth in the fourth quarter of 2021. FRBK's EBITDA grew 50% from $5.6 million in quarter four 2020 to $8.5 million in quarter four 2021. FRBK's net profit increased 64% from $3.2 million in quarter four 2020 to $5.2 million in quarter four 2021.[7]

**C.     Norcross and the Norcross Group.**

43.     Mr. Hill's success in rebuilding FRBK did not go unnoticed.  Institutional investors, like Driver and the Norcross Group (defined below), who purchased FRBK shares now want to cash out for a premium.  They are now exerting undue pressure on FRBK and its Board to try to force a sale or refinancing of RFBK that will give them maximum value on their investments, without regard for what their actions might mean for most of FRBK's shareholders.

---

[5] Jeff Blumenthal, *Nine years later, Vernon Hill is back as a bank chairman*, PHILA. BUS. J. Dec. 5, 2016.
[6] Jeff Blumenthal, *The battle for Republic First: With attacks coming from all sides, is this checkmate for Vernon Hill*, PHILA. BUS. J. Mar. 16, 2022.
[7] NewsRoom, *Vernon W. Hill CEO of RepublicFirst Bancorp in top 12% of NASDAQ CEO Scorecard for net profit growth in quarter ended December 2021*, NEWS BITES - PEOPLE IN BUSINESS, Mar. 18, 2022.

44.     Norcross, along with Phillip Norcross ("**P. Norcross**"), Gregory Braca ("**Braca**") and the Avery Conner Capital Trust (collectively the **Norcross Group**") are recent investors in FRBK.  The Norcross Group currently holds 9.3% of FRBK's common shares.

45.     The Norcross Group has a well-documented history of questionable and self-serving related party conduct and, in the case of Braca, overseeing illegal banking practices.  It was widely publicized that in 2003, Norcross lobbied for public funds to be apportioned for the construction of an arena for his majority-owned minor league hockey team without observing the rules governing lobbyists in New Jersey.[8]  As a result of public scrutiny, Norcross ultimately relinquished his majority interest in the team.[9]

46.     In 2006, Norcross was placed under investigation for official corruption by federal prosecutors in connection with recorded expletive-laden threats against his adversaries and boasts about his ability to make political appointments.[10]

47.     While serving as Chairman and Chief Executive Officer of Commerce Bank's insurance division, Norcross misused its funds to contribute to his political allies and, coincidentally, reaped the financial rewards of his connections to elected officials.[11]  As observed by the New York Times, "[o]ver the years, one of the biggest knocks against Norcross is that he has used his considerable wealth and influence to foster what is known as the 'pay to play' system, in which businesses that buy the most seats at political fund-raising events and otherwise contribute to campaigns jump to the top of the list when it comes to awarding government contracts."[12]

---

[8] Brian Murphy, *What's The Matter With Jersey? Understanding the Garden State's Deep and Bipartisan Culture of Corruption*, TALKING POINTS MEMO, Jan. 26, 2014, https://talkingpointsmemo.com/cafe/whats-the-matter-with-jersey; Jill P. Capuzzo, *The Power Behind The Powerful*, NY TIMES, May, 25, 2003. ("**Capuzzo Article**").
[9] *See* Capuzzo Article.
[10] David Kocieniewski, *No Title and No Elective Office, but Influence Across New Jersey*, NY TIMES, Jan. 7, 2006.
[11] *See* Capuzzo Article; David Kocieniewski, *Power Broker Has No Post, But Big Role*, NY TIMES, Apr. 9, 2003.
[12] *See* Capuzzo Article.

48.     Consistent with the New York Time's characterization, Norcross also helped broker a state tax break program through which Norcross, P. Norcross and their associates received substantial windfalls. Of the $1.6 billion in tax breaks, reportedly, at least $1.1 billion went to Norcross's own insurance brokerage, his business partnerships and charitable affiliations, and clients of P. Norcross's law and lobbying firms.[13] The tax break program was subject to investigation by state and federal law enforcement.[14]

49.     In August 2020, during Braca's tenure as CEO of TD Bank U.S., the bank was ordered to pay $122 million in restitution and penalties to resolve claims brought against it by the Consumer Financial Projection Bureau (the "**CFPB**"). According to the CFPB, when TD Bank enrolled consumers in an optional overdraft service over the phone, TD Bank deceptively described the service as covering transactions that in reality were unlikely to be covered by the service. The CFPB claimed that "TD Bank engaged in abusive acts or practices by materially interfering with consumers' ability to understand [the] terms and conditions."[15]

**D.     Cooper and Driver Management.**

50.     J. Abbot R. Cooper ("**Mr. Cooper**") is the founder and a principal of Driver. Collectively, Driver owns 1.21% of FRBK's common shares.[16] Driver is an activist investor and hedge fund that has created a dubious business model out of targeting regional banks for hostile takeovers or forcing them to sell under terms that are disadvantageous to the majority of shareholders.

---

[13] Nancy Solomon and Jeff Pillets, *How Companies and Allies of One Powerful Democrat Got $1.1 Billion in Tax Breaks*, PROPUBLICA, May 1, 2019; Nancy Solomon and Jeff Pillets, *How a Politically Powerful Family Muscled a Nonprofit Out of Some of a City's Most Valuable Land*, PROPUBLICA, Oct. 3, 2019.
[14] *Id.*
[15] *See* Jeff Blumenthal, *TD Bank fined $122M for enrolling customers in overdraft service without consent*, PHILA. BIZ. J., Aug. 20, 2020; Megan Leonhardt, *TD Bank agrees to pay $122 million to settle claims it employed illegal overdraft practices*, PHILA. BUS. J., Aug. 21, 2020.
[16] *See* Driver's January 14, 2022 Schedule 14A.

51.     For instance, on December 16, 2019, Driver called on directors of First United Corp., the holding company for Maryland and West Virginia community bank First United Bank & Trust, to immediately adopt a plurality voting standard in contested proxy elections.[17] Litigation later ensued between Driver and First United Corp. However, on June 11, 2020, First United Corp.'s shareholders re-elected First United Corp.'s proposed slate directors to the bank's board, handing victory to management and ending a months-long proxy contest with Driver.[18]

52.     In 2020, Driver pushed for Community Bankers Trust Corporation, the holding company for Virginia community bank Essex Bank, to sell itself.[19] In an open letter to shareholders, Driver criticized the bank for deterring potential buyers and for having unrealistic expectations with respect to a sale.[20] On December 3, 2021, it was reported that United Bankshares, Inc., had acquired Community Bankers Trust Corporation.[21]

53.     Additionally, Driver is the beneficial owner of 6.72% of the outstanding shares of Codorus Valley Bancorp, Inc.[22] Driver nominated three independent candidates for election to that bank's board of directors.[23] And, in July, 2021, Driver urged the bank to pursue a sale.[24]

54.     FRBK is Driver's latest target.

55.     On October 29, 2021, Driver issued a letter to FRBK's Board criticizing Mr. Hill's leadership and FRBK's "The Power of Red is Back" model – a strategy agreed upon and embraced by Mr. Madonna and the other members of the Madonna Faction.  At the conclusion of the letter,

---

[17] *Driver Management Sends Letter to the Independent Directors of First United*, BUSINESS WIRE, Dec. 16, 2019.
[18] Holden Wilen, *First United Wins Proxy Fight against Activist Investor*, BALTIMORE BUS. J., June 11, 2020.
[19] Svea Herbst-Bayliss, *Hedge fund Driver Management pushes for sale at Codorus Valley Bancorp*, REUTERS, July 6, 2021 ( "**Herbst-Bayliss Article**")
[20] *Id*.
[21] *United Bankshares, Inc. Completes Its Acquisition of Community Bankers Trust Corporation*, BUSINESS WIRE, Dec. 3, 2021.
[22] *Driver Management Makes Public Key Documents Related to Codorus Valley Bancorp's Questionable $8.04 Million Loan*, Yahoo Finance, Mar. 11, 2022.
[23] *Id*.
[24] Herbst-Bayliss Article.

Driver demanded that FRBK remove Mr. Hill from his position on the FRBK Board and as CEO of FRBK.

56.     Two days later, on November 1, 2021, Driver sent a follow up letter to its October 29, 2021 letter in order to provide objections to a planned common equity capital raise. On November 8, 2021, Driver sent another letter, this time to FRBK's Nominating Committee, further objecting to the planned capital raise by FRBK's Board and alleging that such a capital raise would constitute a breach of Mr. Hill's fiduciary duties.

57.     On or about November 23, 2021, Driver submitted a slate of candidates comprised of three individuals – Peter B. Bartholow, Pamela D. Bundy, and Mr. Sinkfield (the "**Driver Slate**") – to fill the Board seats that are up for election at FRBK's upcoming 2022 annual shareholders' meeting (the "**Annual Meeting**").

58.     The Driver Slate and the Madonna Faction are fundamentally connected.   Mr. Cohen has close ties to at least one member of the Driver Slate – Mr. Richard H. Sinkfield ("**Mr. Sinkfield**").   Mr. Cohen sits on the board and Compensation Committee of Laureate Education, Inc. ("**Laureate**"). Mr. Sinkfield is the Chief Legal Officer of Laureate.  In July 2020, Mr. Cohen approved an approximately $675,000 bonus for Mr. Sinkfield – a bonus that exceeded his target bonus percentage by approximately 20%.  Upon information and belief, the remaining members of the Driver Slate share connections with the Madonna Faction. Indeed, given just Mr. Cohen's deep ties to Mr. Sinkfield, which he initially denied to his fellow directors, it simply beggars belief that the Madonna Group is not collaborating directly with Driver.

59.     As of the beginning of 2022 up until the death of Mr. Flocco, the Incumbent Directors were Class III Directors of FRBK's Board eligible to be re-elected at the Annual Meeting.

60.     Shortly after submitting the Driver Slate, on December 9, 2021, Driver filed a Schedule 14A with the SEC stating that Driver had issued a press release dated the same day regarding its decision to nominate the Driver Slate. The December 9, 2021 press release states, *inter alia*, "[l]ike many shareholders, we are concerned with Republic First Bancorp's decision to pursue a highly dilutive capital raise," and goes on to provide short biographies of each candidate constituting the Driver Slate.  Neither Driver nor any of the Madonna Faction have ever publicly disclosed their connections or collaboration, nor have they made the requisite SEC filings to identify and disclose their arrangement and agreement to coordinate and cooperate in ousting Mr. Hill and the other Incumbent Directors and sell-out to the Norcross Group.

61.     The same day, FRBK filed a Form 8-K with the SEC announcing that it had received a letter from Driver disclosing Driver's intent to nominate an "alternative slate of candidates" as directors in connection with the Annual Meeting.

**E.     The Madonna Faction Signal Their Interest in a Quick Sale of FRBK.**

62.     In January 2022, the Norcross Group filed a Schedule 13D with the SEC, which included a letter to the Board requesting an opportunity to discuss long-term investment and future growth with FRBK. The January 2022 Norcross letter proposes a number of changes to FRBK's strategy, including replacing Mr. Hill as CEO and a number of other actions that did not align with the strategy previously decided by the Board and underway for several years. It was also the strategy previously agreed upon <u>by the entire Board, including the Madonna Faction</u>.

63.     The following month, on February 7, 2022, the Norcross Group filed another Schedule 13D/A with the SEC, which again noted that the Norcross Group had requested "the opportunity to begin a dialogue . . . with the hope that you and we could develop a plan that would benefit Republic First Bancorp, Inc., its shareholders, and its other constituencies . . . ."  The

February 7 letter continued: "[A]lthough we did have a brief and unproductive conversation with Mr. Hill, Mr. Hill indicated no interest on his part in any discussions" about Norcross' proposals.

64.    Not coincidentally, the day after the Norcross Group filed the February 7 letter with the SEC, the Madonna Faction signaled its interest in selling FRBK. Specifically, during a February 8, 2022 telephonic Board meeting, Mr. Cohen asked the Board when the best time would be to "optimize" FRBK's value.

65.    Messrs. Flocco, Hill, Spevak and Tierney responded noting that they had   no interest in soliciting any such offers for the acquisition of FRBK given that banks were not trading on terms that would be advantageous to FRBK's shareholders.  Furthermore, they noted that FRBK is only in the middle of the planned expansion strategy approved by the Board.  The returns on that strategy have not yet been realized and are only just beginning to be apparent.

66.    While a sale or refinancing of FRBK might be beneficial to the individual economic interests of the Madonna Faction, who may need liquidity for personal or other reasons all of whom have a low basis in their FRBK stock, having in some cases owned FRBK stock since the bank's founding – a premature sale or recapitalization would not result in similar returns for the majority of FRBK's shareholders.  The Madonna Faction did not and does not care.  In fact, in numerous instances in FRBK Board meetings in late 2021 and early 2022, the Madonna Faction proposed to vote, and voted, in favor of entertaining inquiries and possible offers for the sale of FRBK and have vigorously advocated for a sale to the Norcross Group, even though the Norcross Group offer significantly undervalues FRBK and would be disadvantageous to FRBK's shareholders. Despite all of this, neither the Norcross Group nor the Madonna Faction has ever disclosed to the SEC or FRBK's shareholders the existence of their collaboration and cooperation.

**F.    In the Middle of a Proxy Fight, the Madonna Faction Issue a March Press Release Which Includes Materially False and Misleading Information and Accusations**

**Against the Incumbent Directors.**

67.     On February 10, 2022, the Norcross Group stated publicly that it intended to solicit proxies in support of the Driver Slate and in opposition to the Board's proposed slate.

68.     On February 22, 2022, the Board voted on and by resolution unanimously approved the Incumbent Directors for nomination as FRBK's proposed slate of Class III directors for the Annual Meeting.

69.     At the time, FRBK's slate and the Driver Slate were the only two competing slates for the Class III directors seats up for election at the 2022 Annual Meeting.

70.     On February 24, 2022, FRBK filed a Form 8-K with the SEC, stating that pursuant to a vote of a majority of the members of the Compensation Committee, Mr. Madonna's Employment Agreement with FRBK would not be renewed.  As a result of the nonrenewal, Mr. Madonna's Employment Agreement would accordingly terminate in accordance with its terms on February 28, 2023.

71.     In light of the Incumbent Directors refusal to entertain a short-term sale or refinancing of FRBK and the Mr. Madonna's anger at the non-renewal of his Employment Agreement, the Madonna Faction initiated its coup in March 2022.  This coup began with a violation of federal proxy solicitation laws.

72.     On March 4, 2022, the Madonna Faction issued a press release falsely alleging misconduct on the part of the Incumbent Directors (the "**March Press Release**"). The March Press Release was captioned, "CONCERNED REPUBLIC FIRST BANCORP DIRECTORS OPPOSE POTENTIAL HARMFUL ACTIONS BY OTHER COMPANY BOARD MEMBERS / Urge Certain Directors Not to Pursue Self-Dealing Transactions / Approval of Executive Compensation Agreements By Certain Directors Could Jeopardize Retention of Key Executives."

73.     The March Press Release raises alleged "concerns" with: (i) the "[e]xtension of a contract to have a company owned by Hill's wife, Shirley, handle architecture, interior design and related services for the bank's branches[;]" (ii) "[a]greements obligating the incurring [of] expenses related to the opening of new branches and the renovation of existing ones[;]" and (iii) "proposed amendments to certain employment contracts that would provide significantly augmented severance payments to, and risk retention of, key executives should Hill be voted off the company's board at the upcoming annual meeting or cease to serve as CEO."

74.     The March Press Release led to the publication of numerous news articles and media publishing the same false statements about the Incumbent Directors and undermining Incumbent Directors' role as the Board's proposed and nominated Class III Director slate.

75.     The factual underpinnings of the Madonna Faction's allegations in the March Press Release are flawed, materially misleading, and false.  The Madonna Faction's alleged "concerns" regarding the matters referenced in the Press Release were not legitimate or supported by the facts.

76.     The March Press Release was demonstrably false and misleading to the general public (and FRBK shareholders) at the time it was made.

77.     The March Press Release falsely states that the certain **<u>unadopted</u>** change-in-control agreements were or imminently will be adopted by the Board's Compensation Committee. However, as the Madonna Faction knew at the time it made these false public accusations, those "agreements" were **<u>draft</u>** proposed amendments for certain bank executive employment agreements.  These drafts were prepared by outside counsel to FRBK, and were rejected in their draft form by the Board's Compensation Committee.

78.     In the March Press Release, the Madonna Faction also raised purported concerns with previously approved contracts between FRBK, InterArch, Inc., ("**<u>InterArch</u>**"), and Real

Time Media LLC dba Brian Communications, referring to these contracts as "blatant self-dealing." The Madonna Faction's allegations concerning this purported "blatant self-dealing" are demonstrably false.

79.     Specifically, FRBK entered into an agreement with InterArch in April of 2013 (the "**Marketing Agreement**") to provide FRBK with certain marketing, advertising and consulting services.  Since December of 2016 for Messrs. Madonna and Wildstein, and December 2017 for Messrs. Jacobs and Cohen, the Madonna Faction has annually reviewed the fees and services provided by InterArch as part of their roles on the Board.  Each year, the Madonna Faction has approved the InterArch fees and services _without issue or objection_.

80.     At the December 22, 2020 Bank board meeting, the Madonna Faction reviewed the fair market value of InterArch's services, their necessity and scope of the services, and approved the business relationship with InterArch set forth in the Marketing Agreement.  Then, in June of 2021, the revision to the Marketing Agreement was assessed by an independent fair market valuation firm.[25]  The valuation firm concluded that the proposed fees and scope were reasonable and comparable to firms offering similar services.  On June 29, 2021, the Board held a meeting to review the proposal to increase InterArch's fees and revisions to the scope of services. The presentation included a summary of the revised terms, proposed expanded services, and revised, independent third-party valuation findings.   The Board also reviewed an email from the Chairman of the Board's Audit Committee recommending approval of the transaction to the full Board.  Mr. Wildstein, _a member of the Audit Committee_, voted in favor of approving the arrangement with InterArch. Ultimately, the Board, including the Madonna Faction, approved the proposed changes

---

[25] Additionally, an independent fair market valuation of InterArch's fees and services was performed in September of 2020 and concluded that the work performed by InterArch was dictated by FRBK's needs and that the billable rates charged by InterArch were in line with comparable firms offering similar services (if not below market value).

to the InterArch Agreement with no Board members voting against the proposal.

81.     With respect to the Brian Communications agreement, in September of 2013, FRBK entered into a contract with Brian Communication to provide public relations services on behalf of the Bank (the "**PR Agreement**").  At the time, the Board, including Messrs. Madonna and Wildstein, unanimously approved the PR Agreement.  Similar to the Marketing Agreement, each year, the Madonna Faction has reviewed and approved the Brian Communication fees and services (which fees remain unchanged since 2013) without issue or objection.[26]  Most recently, at the December 22, 2020 Bank board meeting, the Madonna Faction reviewed the fair market value of Brian Communications' services, the necessity and scope of the services, and approved the on-going relationship without issue or objection.

82.     In the March Press Release, the Madonna Faction also took issue with already approved expansion efforts and the opening of New Garden City and Broomall/Lawrence Park Bank branches.  Again, the Madonna Faction's baseless concerns fly in the face of their own prior approval or acquiescence regarding FRBK's expansion strategy.    As  the Madonna Faction is well aware, the Broomall/Lawrence Park branch was approved by the Board (including all of the Madonna Faction) as early as August 29, 2017.   In fact, it was already substantially under construction at the time of the March Press Release.  In July of 2020, in the midst of the COVID-19 pandemic, a Board motion was made to rescind and reconsider all of FRBK's planned expansion and renovation efforts – including the New Garden City and Broomall/Lawrence Park planned branches.  This motion did not pass and, in fact, Messrs. Madonna and Cohen voted against the motion showing their support of the planned expansion and renovation efforts.  In June

---

[26] Similar to the Marketing Agreement, an independent fair market valuation of Brian Communication's fees and services was performed in September of 2020 and concluded that the work performed by Brian Communications was dictated by FRBK's needs and that the billable rates charged by Brian Communications were in line with comparable firms offering similar services (if not below market value).

of 2021, the President and Chief Operating Officer of the Bank provided the Board an update on the status of all approved branch expansion sites and branch renovations.  At that time, the Madonna Faction raised no objection and/or issue with the planned expansions or renovations.

83.     Simply put, each of the public statements and claims made by the Madonna Faction in the March Press Release were false and misleading at the times made, and they should be viewed only for that they really are: improper efforts to sway a forthcoming shareholder vote and undermine the Incumbent Directors.

84.     The false March Press Release is a proxy solicitation within the meaning of the Securities Exchange Act of 1934 (the "**Act**") and the rules promulgated in connection with the Act.

85.     The March Press Release reflects the Madonna Faction's self-interested attempt to discredit the FRBK's proposed slate of Board candidates, improperly influence the forthcoming proxy vote, and clear the way to elect directors that will align with the Madonna Faction's goal of selling FRBK in the near term for their personal financial gain.  The Madonna Faction's conduct after the March Press Release would solidify any doubt about their motives.

**G.     The Madonna Faction Interfere With FRBK's Audit.**

86.     On March 8, 2022 – a mere four days after the issuance of the March Press Release – the Norcross Group filed a Complaint in the Court of Common Pleas of Philadelphia County, Pennsylvania against FRBK and the Incumbent Directors, which relies entirely on the false allegations detailed in the March Press Release (the "**Norcross Litigation**").

87.     Meanwhile, on March 11, 2022, Norcross proposed to FRBK a conditional investment of at least $50 million and a possible additional investment of $106 million. The investments would be made in exchange for newly issued non-voting preferred stock and common

stock granting the Norcross Group an aggregate 51% majority stake in FRBK.

88.     As further conditions for the proposed investment, the Norcross Group would be given the right to nominate at least two members of the FRBK Board. Mr. Hill would also be required to resign as chairman of the Board and be replaced as CEO of FRBK and the Bank by Braca.

89.     Although the Norcross Group marketed its proposal as a purported investment in FRBK, in truth, it was a take-over with no benefit to FRBK's shareholders.

90.     At around the same time, the accusations in the March Press Release led FRBK's independent and public auditors Crowe LLP ("**Crowe**") to express concern regarding FRBK's forthcoming audit of its fiscal year 2021 financial statements.   In order to issue an opinion as to FRBK's financials (allowing FRBK to issue audited financials for fiscal year 2021) Crowe advised that each Board member must provide certain written representations certifications to Crowe.

91.     Among other things, the representation letter requested by Crowe and presented to the Madonna Faction included the following:

> I confirm, to the best of my knowledge and belief as of the date of this letter, regarding matters disclosed in the press release issued by the 'Concerned Directors' on March 4, 2022, the following representations made to [Crowe] during [FRBK's] audits:
>
> 1.  You have been provided the names of all related parties and all related party relationships and transactions, and related amounts receivable or payable, including sales, purchases, loans, transfers, leasing arrangements, and guarantees. Those related party relationships have been appropriately accounted for and disclosed in the consolidated financial statements in accordance with the requirements of accounting principles generally accepted in the United States.  I am not aware of any related party transactions that have not been approved, monitored and disclosed in accordance with the processes, procedures and controls established by the Company.

2.  I am not aware of any incurrence of expenditures related to the opening of new branches, or the renovation of existing branches that were not approved in accordance with the processes, procedures and controls established by the Company.

3.  I am not aware that the Compensation Committee, a sub-committee of the board of directors of the Company, has approved changes to employee contracts that are in violation of the authority bestowed upon the Compensation Committee in accordance with the Compensation Committee Charter.

4.  I am not aware of any manipulation of proper corporate governance, or internal control over financial reporting as established by the Company, or the Company's primary subsidiary, Republic First Bank "the Bank".

5.  Based on the Company's board of directors most recent review in March 2022, I have determined that the majority (minimum of 6) of the 10 members of the board of directors of the Bank are fully independent.

6.  I am not aware of any matters or agenda items that have been approved by the board of directors of the Bank to be in violation of the bylaws of the Company, and the Bank.

7.  I am aware that the proposed changes to employment contracts, included in drafts of amended employment contracts for discussion purposes, have not been executed by the Company, the Bank or by the employees of the Company or Bank.

8.  I am not aware of instances of non-compliance or suspected non-compliance with laws or regulations, including breaches of director fiduciary duty, whose effects should be considered for disclosure when preparing the consolidated financial statements or as a basis for recording a loss.

(Emphasis added).

92.     Facing the prospect of the truth coming out, the Madonna Faction conceded that the accusations in the March Press Release were unfounded.  For days, the Madonna Faction took no exception to the requested representations and certifications and agreed to sign the Crowe representation letter as-is in all material respects without exception (essentially recanting their unsupported allegations in the March Press Release).

93.     From March 23, 2022 to March 28, 2022, the Madonna Faction made multiple representations to Crowe that the allegations in the March Press Release were false and agreed to sign the requested written certifications.   After Crowe requested written representation and certification from the Board, Mr. Madonna admitted at a Board meeting (and to other witnesses outside of the Board) that the allegations made in the March Press Release were false and simply "electioneering hyperbole."

94.     Eventually realizing that providing the requested certifications and representations would result in personal liability and potentially hoping to capitalize on the prospect of the Norcross Group offer, the Madonna Faction changed course and tried to cover its tracks.

95.     On or about March 31, 2022, the Madonna Faction conditioned its execution of the requested written representations and certification to Crowe on: (i) FRBK and Crowe holding the certifications in confidence, and (ii) FRBK and the Incumbent Directors agreeing to not: (a) take any legal action with respect to the assertions made in the representation letter vis-à-vis the contradictory and unfounded March Press Release, and (b) disclose publicly that the Madonna Faction had represented to Crowe that the accusations in the March Press Release were false.

96.     The Madonna Faction's decision to condition its delivery of the requested certification on absolution of their misconduct in connection with the March Press Release (and any resultant damages suffered by FRBK and its shareholders) created an insurmountable conflict of interest that has since tainted Board deliberations and the conduct of necessary corporate business (including convening an annual shareholders' meeting), to the significant detriment of FRBK and its shareholders.

97.     In light of the false accusations made in the March Press Release – echoed in the Norcross Litigation – and the fact that the Madonna Faction would not sign the requested

representation letters without the quid pro quo of hold harmless and confidentiality terms, Crowe had had enough.

98.     On March 31, 2022, Crowe advised FRBK's Audit Committee that Crowe would decline to issue an opinion as to FRBK's consolidated financial statements for fiscal year 2021 due to the allegations made by the Madonna Faction in the March Press Release (and the allegations made by the Norcross Group in the Norcross Litigation) and the Madonna Faction requests for a hold harmless and other improper quid pro quo conditions.

99.     Crowe further advised the Audit Committee that prior to providing any opinion as to FRBK's 2021 financials, FRBK must perform and complete an independent investigation conducted by an unrelated qualified and reputable law firm.

100.     In light of the fact that FRBK could not issue audited financials, FRBK could not file a Form 10-K on or before March 31, 2022 as required by applicable SEC rules and regulations. Indeed, FRBK cannot file a Form 10-K until it can provide audited financial statements. Crowe advised FRBK that it would not issue an opinion or certify FRBK's financials until completion of the independent investigation. As a result, FRBK is not be able to file its Form 10-K until the investigation is completed and Crowe certifies its financials.

101.     In light of the foregoing, the Board approved (after deliberation and without objection) FRBK's issuance of the Form 8-K (the "**April 8-K**") on April 1, 2022. The April 8-K advises that FRBK does not expect to file its Annual Report on Form 10-K for year ended December 31, 2021 until such an investigation is concluded and that, as a result, FRBK expects that its 2022 Annual Meeting will be delayed until conclusion of the investigation and filing of FRBK's Annual Report on Form 10-K:

> On March 31, 2022, the independent registered public accounting firm (the Auditor's) of Republic First Bancorp, Inc. (the

'Company'), in connection with its audit of the Company's financial statements for the year ended December 31, 2021, advised the chair of the Company's audit committee (the 'Audit Committee') and management that the Auditors were requesting that an independent investigation be undertaken concerning certain previously disclosed related party transactions and related matters that are the subject of pending litigation involving the Company. The Audit Committee intends to engage independent legal counsel to conduct this investigation. The investigation has not yet begun, no conclusions have been reached, and the Company cannot presently predict the duration or outcome of the investigation. At this time, the Company does not believe that the matters that are the subject of the investigation will have a material adverse effect on the Company's financial condition or results of operations. The Company does not expect to file its Annual Report on Form 10-K for year ended December 31, 2021 until the investigation is concluded. As a result, the Company expects that its 2022 Annual Meeting of Shareholders will be delayed until conclusion of the investigation and filing of the Company's Annual Report on Form 10-K for the year ended December 31, 2021.

102.   In light of Crowe's position and the fact that FRBK could not issue audited financials or a Form 10-K until completion of the independent investigation, the Audit Committee approved the appointment of WilmerHale, as independent legal counsel, to investigate the factual circumstances and allegations detailed in the March Press Release and the Norcross Litigation. This appointment was satisfactory to Crowe, and no member of Board objected to WilmerHale's appointment in April 2022.

103.   At all material times, the Madonna Faction knew the accusations made in the March Press Release were false and misleading. Remarkably, in an e-mail dated April 11, 2022 – days after the announcement of the independent investigation – Mr. Madonna represented to Messrs. Flocco, Spevak, and Wildstein that: "I am confused by the Auditor demand for an investigation into the related party transactions. To the best of my knowledge there is no dispute that all related party transactions were reviewed and approved by the full board."

**H.     The Madonna Faction's Actions Significantly Impair FRBK's Ability to Defend Itself**

**in the Ongoing Proxy Fight.**

104.    Without apparent regard to the ongoing harm it is causing FRBK, the Madonna Faction continued to spin its false narrative.  In doing so, the Madonna Faction was essentially effectuating a scheme to prevent FRBK and its nominated slate of Incumbent Directors from waging a proxy fight against Driver and Norcross.

105.    The Madonna Faction all but usurped FRBK's proxy solicitation function by disseminating false and materially misleading information publicly.  Indeed,  FRBK and the Incumbent Directors are not able to issue proxies prior to FRBK issuing audited financials as SEC regulations require that audited financials be completed before a company like FRBK can send proxies for its annual meeting to its shareholders.

106.    Additionally, as senior officers or directors of FRBK, the Incumbent Directors, were not permitted to send proxies to shareholders by the SEC until the audit is completed.

107.    Driver and Norcross, unlike FRBK, were free to solicit, and were soliciting, proxy votes from shareholders in favor of their slate of Board candidates while FRBK's investigation into the false allegations of the Madonna Faction was ongoing.

108.    Taking advantage of this dynamic, on April 28, 2022, the Norcross Group made a demand on the Secretary of FRBK's Board to hold a special meeting (despite the Norcross Group having insufficient ownership for such a meeting to be held under the by-laws).  In an around that same period of time, and in the demand itself, the Norcross Group was also openly soliciting other shareholders to join them in their demand to reach the 20% ownership threshold to trigger a special meeting under certain, limited circumstances.

109.    Without the ability to receive and submit proxies from the Board-approved slate, the only way that shareholders wishing to vote for candidates running against Driver's Slate

would be to submit a vote in person at the Annual Meeting, making it impossible for any shareholder who cannot travel to the physical location of the meeting on a particular day at a particular time to exercise their right to vote. This would result in disenfranchising all shareholders who wish to vote for FRBK's nominees, but who are unable to attend the Annual Meeting.  It would also run afoul of NASDAQ rules, which require that NASDAQ-listed companies solicit proxies in connection with every shareholders' meeting. Having to hold the Annual Meeting in a way that precludes FRBK from soliciting proxies runs directly contrary to NASDAQ's rules, jeopardizing FRBK's listing, which would be detrimental to FRBK's shareholders.

110.    Furthermore, given that the independent investigation was already underway, and that subsequent disclosure of pertinent information regarding the allegations in the March Press Release would be made available to shareholders, Plaintiffs repeatedly advised the Madonna Faction in April and May 2022 that the independent investigation should be permitted to run its course before FRBK shareholders are asked to vote at the Annual Meeting.  More specifically, the Plaintiffs advised the Madonna Faction that FRBK's Annual Meeting should not be held until after both the Board and shareholders learn the results of the independent investigation and have been provided with audited annual financial statements.

111.    During this same period of time, Plaintiffs also advised the Madonna Faction that conceding to and not rejecting the Norcross Group's request for a special meeting would result in shareholder disenfranchisement, essentially undermine FRBK's nominated slate, and constitute a derogation of the Madonna Faction's fiduciary duties.  The Madonna Faction stood by notwithstanding.

**I.    The Driver Litigation.**

112.    On May 2, 2022, Driver filed a lawsuit in the Eastern District of Pennsylvania,

styled *Driver Opportunity Partners I, LP v. Republic First Bancorp, Inc.*, Case No. 2:22-cv-01694 (the "**Driver Litigation**").  In the Driver Litigation, Driver sought a temporary restraining order and preliminary injunction against FRBK requiring it to proceed with its annual shareholders meeting as soon as possible, and in no event later than June 29, 2022.

113.    The practical effect of Driver's efforts to compel the Annual Meeting prior June 29, 2022, was to short-circuit WilmerHale's independent investigation and essentially hand the Driver Slate an unearned proxy victory (considering that neither FRBK or the Incumbent Directors were permitted to solicit proxies until the completion of FRBK's audit).

114.    If successful, Driver's efforts to compel a meeting prior to the resolution of the investigation would have forced shareholders to vote in person, or forgo voting entirely, and require them to do so without complete and material information about the candidates for whom they are voting.  Essentially the same design as Norcross' efforts to call a special meeting.

115.    The Honorable Paul S. Diamond recognized as much in his recent Order denying Driver's request for a temporary restraining order in the Driver Litigation:

> Finally, Driver has not demonstrated that the balance of equities weighs in favor of a mandatory injunction or that an injunction is in the public interest. On March 31, 2022, Republic filed a Form 8-K with the SEC advising that Republic's external auditors recommended that the Bank engage outside legal counsel to conduct an independent investigation into allegations made in the state court lawsuit. (Compl. ¶ 45 and Ex. 6.) As I have described, this was the result of accusations made by Driver's allies. Having provoked the audit, Driver cannot now be heard to complain that the audit will unfairly delay the Bank's annual meeting. It also appears that Republic's public accountants will not certify Republic's financial statements until the independent investigation concludes.

116.    The Court also found that it appeared the purpose of seeking an injunction in the Driver Litigation was to "to gain an advantage in Republic's upcoming Board election—and not for any valid reason."

**J.    After the April 8-K, The Madonna Faction Continues To Undermine The Operation of FRBK And Provides Assistance And Aid To Driver and Norcross.**

117.     During the pendency of, *inter alia*, (i) the independent WilmerHale investigation, (ii) the delayed audit, (iii) the Norcross Litigation, and (iv) the Driver Litigation, from March to May 2022, the Madonna Faction continued to undermine FRBK's functions and in doing so, harmed FRBK's shareholders in the process.

118.     For example, despite Mr. Madonna's admission that the allegations of self-dealing raised in the March Press Release were false, the Madonna Faction refused to allow FRBK's outside counsel to meritoriously defend FRBK in the Norcross Litigation.  Specifically, the Madonna Faction deadlocked the Board and prohibited FRBK from directing outside counsel to assert meritorious defenses and legal positions advised by outside counsel.  There was absolutely no valid basis for the Madonna Faction's refusal to authorize FRBK from making arguments or taking positions in the best interests of FRBK and its shareholders.

119.     The same is true with respect to the Driver Litigation. The Madonna Faction would not permit a unanimous response to the frivolous claims advanced by Driver, leaving FRBK without the ability to respond to Driver's request for a temporary restraining order against it. Without this Court specifically ordering the Incumbent Directors to respond on behalf of FRBK, in all likelihood, the Madonna Faction would have foreclosed FRBK from meaningfully responding to the Driver Litigation and FRBK would have waived meritorious legal defenses and arguments.

**K.     The Madonna Faction's Unseemly Efforts to Capitalize on the Untimely Passing of Mr. Flocco to Wrestle Control of the Board and Commit FRBK to a Course of Illegal Conduct.**

120.     Mr. Flocco sadly passed away on May 10, 2022.

121.     Pennsylvania law authorizes corporate boards to specify how a quorum is constituted for purposes of transacting business at a meeting of the board of directors.

Pennsylvania specifically allows the By-Laws to derogate from the default rule under which a quorum is constituted by a majority of directors "in office."

122.    FRBK's By-Laws, Article II, Section 15, provide the following with respect to quorum:

> Quorum and Voting. A majority of the members **[of] the <u>entire Board</u> of Directors shall be present in person at any meeting of the Board so as to constitute a quorum for the transaction of business at the meeting**, and except as otherwise expressly required by statute, the Corporation's Articles of Incorporation, these By-Laws, or any applicable statute, the act of a majority of the directors present at any meeting at which a quorum is present shall be the act of the Board . . . .

123.    By specifying that a majority of the members of the "entire Board" constitutes a quorum, FRBK's By-Laws manifest a clear intention to derogate from the default - majority "in office" - rule, and instead require a majority of the total number of directors (i.e., a majority of the total number of board *seats*) to constitute a quorum.

124.    After Mr. Flocco's passing, FRBK still had eight director positions on the Board. Thus, five members (a majority of the total number of seats) were necessary for a Board quorum under FRBK's By-Laws.

125.    Mr. Flocco's untimely passing did not alter the quorum requirement because FRBK had explicitly rejected Pennsylvania's default majority "in office" rule in its By-Laws

126.    Nonetheless, on May 12, 2022, Mr. Madonna purported to call a special meeting of the Board as follows and without quorum: "[p]ursuant to the demand of a majority of the Board of Directors, under Article II, Section 10 of the By-Laws, as Secretary, I hereby call for a telephonic meeting of the Board of Directors at 10:30 AM Friday, May 13th."

127.    The next day, Mr. Hill responded that "Directors Hill, Tierney and Spevak object to the calling by Messrs. Madonna, Cohen, and Harris and Ms. Jacobs of a telephonic special meeting of the Board of Directors scheduled for May 13 at 10:30 a.m.  The rushed demand for a

meeting without any agenda and within a day of the passing of Mr. Flocco is both unseemly and improper. Messrs. Hill, Spevak and Tierney will not attend the meeting. Pursuant to Article II, Section 15 of the Amended and Restated By-Laws of Republic First Bancorp, Inc., in the absence of Messrs. Hill, Tierney or Spevak, there will not be a quorum of the entire Board of Directors, and no business may be transacted."

128.    Nonetheless, on May 13, 2022, the Madonna Faction proceeded with its improperly called special meeting of FRBK's Board without the participation of Plaintiffs.  In its improperly called meeting, the Madonna Faction purported to act on behalf of the Board (and FRBK) and voted (without quorum) to do the following in the name of the Board and FRBK: (i) replace Mr. Hill as Chairman of the Board with Mr. Madonna as Interim Chairman, (ii) appoint Ms. Jacobs as the Corporate Secretary of FRBK, (iii) remove certain executives from their positions with the Bank, and (iv) authorize the Interim Chairman – Mr. Madonna – to approve external communications issued on behalf of FRBK unilaterally in undefined emergency situations.

129.    Capitalizing on the improperly called Board meeting earlier that day and Mr. Madonna's improperly bestowed unilateral authority to issue press releases on behalf of FRBK, the Madonna Faction issued another press release dated May 13, 2022 (the "**May Press Release**" and together with the March Press Release, collectively, the "**Press Releases**").

130.    In the May Press Release, the Madonna Faction falsely claimed that FRBK "today announced that [the Board] has appointed Harry D. Madonna interim Chairman of the Board, succeeding Vernon W. Hill, II, effective immediately.  Mr. Hill will remain a director on the Board and FRBK's Chief Executive Officer.  In addition, the Board has appointed director Lisa R. Jacobs as Corporate Secretary of FRBK. The transition of these positions follows the passing of director Theodore J. Flocco, Jr."

131.    The May Press Release also indicates that "[FRBK] intends to file a proxy statement and may file a proxy card with the [SEC] in connection with the Company's 2022 Annual Meeting of Shareholders . . . and, in connection therewith, the Company, certain of its directors and executive officers will be participants in the solicitation of proxies from the Company's shareholders in connection with such meeting." *See* May Press Release.

132.    That same day, FRBK's management, at the direction of the Madonna Faction, filed a Form 8-K with the SEC (the "**May 8-K**"). The May 8-K advised FRBK's shareholders that Mr. Flocco had passed away and that "the Board appointed Harry D. Madonna, Esq. to serve as Interim Chairman of the Board."  The May 8-K also attached and further publicized the May Press Release to FRBK's shareholders.

133.    As set forth above, in ruling on Driver's previous Motion for Preliminary Injunction, this Court observed "[i]n its quest to take control of the Board, Driver's allies, in a state court lawsuit, accused the Hill faction of malfeasance, thus provoking an audit and independent investigation.  Until that process is complete, Republic cannot comply with its obligation to provide its shareholders with an audited financial statement before the Bank's annual meeting. *See* 17 C.F.R. § 240.14a-3." (Emphasis added).

134.    FRBK has not yet issued audited financial statements for the 2021 fiscal year.

135.    Pursuant to SEC rules and regulations, FRBK cannot issue proxy solicitations until it provides its shareholders with audited financial statements.  The Eastern District of Pennsylvania has observed that FRBK cannot issue audited financials until the independent investigation is complete.  Any attempt by FRBK or its affiliates to issue proxy solicitations on FRBK's behalf prior to the issuance of FRBK's audited financial statements – as the Madonna Faction suggested FRBK will do –  is a violation of the law.

136.    The May Press Release is a proxy solicitation within the meaning of the rules promulgated in connection with the Act.  The May Press Release is demonstrably false and misleading in that it purports to mislead the general public and FRBK's shareholders regarding appropriate Board action.

137.    The May Press Release is unequivocal proof that the Madonna Faction are: (i) engaging in *ultra vires* acts without Board quorum, and (ii) committing FRBK to an unlawful course of conduct.

138.    The Press Releases – which have been widely disseminated, broadcasted, and re-broadcasted to the general public – have caused immense reputational damage and harm to the Plaintiffs and FRBK.  For example, a number of FRBK's stockholders have represented to Plaintiffs that they will be liquidating their stock position in light of the Madonna Faction coup.  The Plaintiffs' other business and interests have also suffered irreparable harm as a result of the reputational damage caused by the Madonna Faction's conduct.

**L.    Immediate and Irreparable Harm Excuses Pre-Suit Demand on the Board**

139.    Under Pennsylvania law, which governs this Court's analysis concerning a pre-suit demand on the Board, demand is excused if immediate and irreparable harm to FRBK would otherwise result, which as set forth herein no doubt is present. 15 Pa. C.S. § 1781(b)(2).

140.    Mr. Flocco passed away on May 10, 2022.

141.    On May 12, 2022, Mr. Madonna purported to call a special meeting of the Board without the quorum necessary to hold such a meeting.

142.    At that meeting, and without a quorum present, the Madonna Faction (i) replaced Mr. Hill as Chairman of the Board with Mr. Madonna as Interim Chairman, (ii) appointed Ms. Jacobs as the Corporate Secretary of FRBK, (iii) remove certain executives from their positions

with the Bank, and (iv) authorized the Interim Chairman – Mr. Madonna – to approve external communications issued on behalf of FRBK unilaterally in undefined emergency situations.

143.    On May 13, the Madonna Faction caused FRBK to file an 8-K containing the May Press Release, which constitutes a proxy solicitation issued in violation of the SEC's proxy solicitation rules.

144.    As a result of these facts and others set forth herein, including the various *ultra vires* acts the Madonna Faction is engaged in without Board quorum and the continued unlawful course of conduct it pursues, Plaintiffs are under no obligation to make demand on the Board to institute this action against the Madonna Faction.

145.    Such conduct has caused and will continue to cause irreparable harm to FRBK and Plaintiffs, namely, reputational harm in the market, inability to transact day-to-day business, shareholder disenfranchisement, entry into unlawful and unenforceable *ultra vires* acts, transactions that are blatantly in violation of federal proxy laws, hamstringing FRBK in its defense of meritless litigations, and selling FRBK for far less than it is worth.

146.    The threat of such harm is immediate as evidenced by Mr. Madonna's purported Board meeting and the Madonna Faction's *ultra vires* consolidation and exercise of Board power, in violation of the By-Laws, just days after Mr. Flocco's passing.  These transgressions continue to mount and pile on an almost daily basis and the threat of further irreparable harm is immediate and imminent.

147.    Moreover, the imminent likelihood that the Madonna Faction will continue to hold *ultra vires* Board meetings to further their self-interested machinations demands that Plaintiffs and FRBK be granted an expedited hearing on its request for preliminary injunctive relief.  Indeed, on the eve of May 16, 2022, Mr. Madonna advised the Board that "***I am calling for two meetings of***

*__the Board of Directors of Republic First Bancorp. : the first on Tuesday May 17th at 9:30 PM;__*

*__and, the second on Wednesday May 18th at 1:00 PM.__*"

148.    Because the Madonna Faction has purported to take Board action for the conflicted and self-interested benefit of its members at the expense of FRBK and FRBK's shareholders, the Madonna Faction is not entitled to business judgment rule deference and must be held personally liable.

149.    The Plaintiffs have satisfied all conditions precedent to bringing this lawsuit.

## COUNT I
## BREACHES OF FIDUCIARY DUTIES

150.    Pennsylvania law codifies corporate directors' fiduciary duties to the corporation and its shareholders at 15 Pa. C.S. §§ 512, 1712, and 1728.

151.    A director "is obligated to perform his or her duties in good faith and in a manner reasonable believed to be in the best interest of the corporation."  15 Pa. C.S. § 512.

152.    The duty of care obligates to the director to "use such care, skill and diligence as would a person of ordinary intelligence under similar circumstances."  *Id.*

153.    The duty of loyalty obligates directors to perform their duties "in good faith, in a manner he [or she] reasonably believes to be in the best interests of the corporation."  15 Pa. C.S. 1712.  This requires directors to devote themselves to corporate affairs with a view to promote the common interests and not only their own, and directors cannot directly or indirectly utilize their position to obtain any personal profit or advantage other than that enjoyed by their fellow shareholders.  *In re Lampe*, 665 F.3d 506, 518 (3d Cir. 2011).

154.    Corporate directors are personally liable for breaches of fiduciary duty.  15 Pa. C.S. § 1713.

155.    In addition to corporate directors, defendants who wield effective control over a

corporation take on fiduciary duties, even where such defendants are stockholders or other parties who would not otherwise owe fiduciary duties in that capacity. *See Basho Techs. Holdco B, LLC v. Georgetown Basho Invs., LLC*, No. CV 11802-VCL, 2018 WL 3326693, at *26 (Del. Ch. July 6, 2018), *aff'd sub nom. Davenport v. Basho Techs. Holdco B, LLC*, 221 A.3d 100 (Del. 2019).

156.    Such control is found, for example, where: (i) the defendant has the ability to exercise a majority of the corporation's voting power, or (ii) where the defendant or a group of defendants, as a practical matter, possess a combination of stock voting power and managerial authority that enable them to control the corporation, if they so wish. *Voigt v. Metcalf*, No. CV 2018-0828-JTL, 2020 WL 614999, at *11–12 (Del. Ch. Feb. 10, 2020).

157.    Different sources of influence that would not support an inference of control if held in isolation may, in the aggregate, support an inference of control. *Id.*

158.    In assessing effective control, courts consider factors including: (i) relationships between the defendant and members of a company's board of directors, (ii) the size of the defendant's equity stake, (iii) relationships with key executives and advisors, and (iv) other sources of influence, including the role that the defendant or its representatives play in the boardroom. *Id.*, at *22.

159.    Here, the Madonna Faction members owe fiduciary duties to FRBK and its shareholders in their capacity as directors and also as a result of their exercise of effective control over the FRBK as they have demonstrate in the previous week.

160.    A defendant breaches his or her fiduciary duties to the corporation by consolidating control to pursue self-dealing or other self-interested transactions that put the defendant's own interests, rather than the interests of the corporation and its stockholders as a whole, first. *Basho Techs. Holdco B, LLC v. Georgetown Basho Invs., LLC*, No. CV 11802-VCL, 2018 WL 3326693,

at *28 (Del. Ch. July 6, 2018), *aff'd sub nom. Davenport v. Basho Techs. Holdco B, LLC*, 221 A.3d 100 (Del. 2019); *Voigt v. Metcalf*, No. CV 2018-0828-JTL, 2020 WL 614999, at *22 (Del. Ch. Feb. 10, 2020).

161.    This includes where the defendant exerts control to force the corporation into a financial position in which it has no choice but to pursue the defendant's desired self-interested transaction. *Basho*, 2018 WL 3326693, at *28.

162.    And also where a director or controlling defendant places his or her own interests in short-term liquidity to pursue transactions that subordinate the best interests of the corporation and the stockholders. *See In re PLX Tech. Inc. S'holders Litig.*, No. CV 9880-VCL, 2018 WL 5018535, at *41 (Del. Ch. Oct. 16, 2018), *aff'd*, 211 A.3d 137 (Del. 2019); *In re Answers Corp. S'holder Litig.*, No. CIV.A. 6170-VCN, 2012 WL 1253072, at *7 (Del. Ch. Apr. 11, 2012) (denying motion to dismiss, and recognizing that a defendant's "interest in a prompt liquidation event conflicted with those of common shareholders"); *New Jersey Carpenters Pension Fund v. Infogroup, Inc.*, No. CIV.A. 5334-VCN, 2011 WL 4825888, at *10 (Del. Ch. Sept. 30, 2011) (denying motion to dismiss where plaintiff alleged that liquidity benefit received by defendant was a personal benefit not equally shared by other shareholders);

163.    The members of the Madonna Faction have breached their fiduciary duties to FRBK and their fellow stockholders by, without limitation:

a.    Releasing the false and defamatory Press Releases;

b.    Violating FRBK's bylaws;

c.    Engaging in improper efforts to discredit FRBK's proposed slate of Board candidates;

d.    Attempting to influence the forthcoming shareholder proxy vote and undermine

FRBK's board slate;

e.      Creating circumstances under which FRBK could not wage a proxy contest;

f.      Engaging in a course of conduct aimed at circumventing prior Board action;

g.      Making numerous publically-false statements and misleading accusations about Plaintiffs in violation of federal proxy laws;

h.      Requesting hold harmless and other quid pro quo conditions from Crowe;

i.      Improperly calling a special meeting of FRBK's Board;

j.      Serving their own self-interest over the best interests of FRBK and FRBK's shareholders'

k.      Purporting to replace Mr. Hill as Chairman of the Board with Mr. Madonna as Interim Chairman;

l.      In doing so, needlessly costing FRBK millions to further their plot or to satiate Mr. Madonna's massive and fragile ego by constructively terminating Mr. Hill, thereby triggering Mr. Hill's rights to a payout of millions of dollars, all to the detriment of FRBK'S shareholders.

m.      Removing certain executives from the Bank without the authority to do so; and

n.      Authorizing Mr. Madonna to issue purported external communications on behalf of FRBK unilaterally and in undefined emergency situations.

164.    The above referenced conduct has proximately caused substantial and irreparable harm to FRBK and the Plaintiffs.

## COUNT II
## DECLARATORY JUDGMENT REGARDING
## THE MADONNA FACTION'S BREACHES OF FIDUCIARY DUTIES

165.    Plaintiffs repeat and incorporate all of the foregoing allegations.

166.    Under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, federal courts have unique and substantial discretion in deciding to declare the rights of litigants.

167.    Upon information and belief, the Madonna Faction's efforts are the first phase of a concerted scheme to force a fire sale of FRBK that is motivated by their own short-term interests in liquidity at the expense of the interests of FRBK as a whole and their fellow stockholders, including Plaintiffs.

168.    Upon further information and belief, the Madonna Faction's efforts are animated by personal animus towards the Incumbent Directors and their own self-interest.

169.    If the Madonna Faction activities are not declared unlawful and enjoined, FRBK and its stockholders will suffer irreparable harm, including, but not limited to, (i) loss of equity, (ii) reputational harm in the market, (iii) inability to transact business, and (iv) entry into unlawful and unenforceable *ultra vires* acts and transactions that are blatantly in violation of federal proxy laws.

170.    An actual and justiciable controversy exists between the parties because the Madonna Faction contend that they have the right to transact business on behalf of FRBK and the Board and to pursue the unlawful scheme described above.

171.    On the other hand, Plaintiffs maintain that the Madonna Faction's actions are *ultra vires* and taken in breach of their fiduciary duties.

172.    The parties accordingly have adverse legal interests, the facts are sufficiently concrete to allow for conclusive legal judgment, and the judgment will be useful to the parties in

defining the scope of their authority to act on behalf of the corporation.

## COUNT III
### VIOLATION OF THE FEDERAL PROXY LAWS (SECTION 14(a) and RULES 14a-3, 14a-6, AND 14a-9 UNDER THE SECURITIES EXCHANGE ACT OF 1934)

173.    Plaintiffs repeat and incorporate all of the foregoing allegations.

174.    The Press Releases were solicitations as that term is defined under the Act and the rules and regulations promulgated thereunder.

175.    The Madonna Faction engaged in these solicitations without filing a preliminary or definitive proxy statement with the SEC and without providing a copy to the solicited shareholders, in violation of rules and regulations governing the Act, including Rule 14a-3 and 14a-6.

176.    Each of the Defendants caused the Press Releases, which constitute proxy solicitations to issue.

177.    Each of the Press Releases contain materially false and misleading information.

178.    The Madonna Faction purposefully and with intent caused the Press Releases to be issued knowing that they were false at the time made.

179.    With respect to the March Press Release, the Madonna Faction knew the accusations made in the press release were false when made.  Indeed, they would later recant these accusations and equate them with "electioneering hyperbole."

180.    With respect to the May Press Release, the Plaintiffs advised the Madonna Faction that there was no quorum for the May 13, 2022 inappropriately called special meeting of the Board. The Madonna Faction proceeded with the improper Board meeting and took actions during the meeting that were *ultra vires*.  The Madonna Faction knew that the actions they purported to take at the May 13, 2022 Board meeting were without authority.  The Madonna Faction caused the May Press Release to issue that included false and materially misleading statements that FRBK's Board

had authorized FRBK to take certain actions when in fact there was no quorum for the May 13, 2022 Board meeting and thus no FRBK business could transact.

181.   Each of the Defendants failed to conduct adequate diligence, as required by the federal securities laws, and/or knew that the information contained in the Press Releases was false and misleading.

182.   These acts violated Rule 14a-9 of the Act.

183.   The Plaintiffs have been damaged and irreparably harmed as a proximate result of the Madonna Faction's violations of the Act and the rules promulgated thereunder.

### COUNT IV
### DECLARATORY JUDGMENT REGARDING THE MADONNA FACTION'S VIOLATION OF THE FEDERAL PROXY LAWS (SECTION 14(a) and RULES 14a-3, 14a-6, AND 14a-9 UNDER THE SECURITIES EXCHANGE ACT OF 1934)

184.   Plaintiffs repeat and incorporate all of the foregoing allegations.

185.   A ripe controversy exists because the Madonna Faction has stated its intention to cause FRBK to violate the federal proxy laws by issuing proxy solicitation prior to FRBK issuing audited financial statements.

186.   Plaintiffs are entitled to declaratory judgment that neither the Madonna Faction nor any FRBK officer, director, employee, or anyone else acting or purporting to act on the Board or FRBK's behalf may engage in proxy solicitation activities or schedule an annual meeting in violation of the federal proxy laws and the rules and regulations promulgated under the Act.

187.   An actual and justiciable controversy exists between the parties because the Madonna Faction contend that it has the right to transact business on behalf of the corporation and to pursue the unlawful acts described above.   On the other hand, Plaintiffs maintain that the Madonna Faction's proposed actions would violate the federal proxy laws, and accordingly, result in irreparable harm to FRBK.

188.     The parties accordingly have adverse legal interests, the facts are sufficiently concrete to allow for conclusive legal judgment, and the judgment will be useful to the parties in defining the scope of their authority to act on behalf of the corporation.

**COUNT V**
**DECLARATORY JUDGMENT REGARDING THE MADONNA FACTION'S VIOLATION OF FRBK'S BY-LAWS IN TRANSACTING BUSINESS, SPEAKING AND OTHERWISE ACTING ON BEHALF OF THE CORPORATION**

189.     Plaintiffs repeat and incorporate all of the foregoing allegations.

190.     Under Pennsylvania law and the By-Laws, the Board is charged with the duty and responsibility to manage the business affairs of FRBK.  Under the default standards set forth by the By-Laws, the Board cannot act without a quorum as that term is defined in the By-Laws.

191.     As alleged herein, the Madonna Faction purported to take actions on behalf of FRBK without Board authorization, including, purporting to cause FRBK to: (i) issue the May Press Release, (ii) terminate Mr. Hill's status as chairman of the Board, (iii) terminate certain executives director status on the Bank, (iv) appoint Ms. Jacobs as corporate secretary, (v) commit FRBK to proxy solicitation activities in contravention of the law, and (vi) other unauthorized acts.

192.     The Madonna Faction contend it was permitted to do so and have already begun using FRBK's resources to advantage themselves and the interests of their allies.

193.     Plaintiffs are entitled to declaratory judgment that the Madonna Faction nor any FRBK officer, director, employee, or anyone else acting or purporting to act on the Board or FRBK's behalf may speak for the Board or FRBK or may take any action on behalf of FRBK or the Board without proper authorization from the Board or authorize FRBK finances or resources to be used or expended in commission of the Madonna Faction's improper scheme (inclusive of the payment of fees to the Madonna Faction attorneys and counsel).

194.     An actual and justiciable controversy exists between the parties because the

Madonna Faction contends that it has the right to have the right to speak for the Board or FRBK and to transact business on behalf of FRBK and to pursue the unlawful acts described above.  On the other hand, Plaintiffs maintain that the Madonna Faction has acted *ultra vires* and that any further actions taken by it in managing the business of FRBK will be *ultra vires* absent a proper quorum.  The parties accordingly have adverse legal interests, the facts are sufficiently concrete to allow for conclusive legal judgment, and the judgment will be useful to the parties in defining the scope of their authority to act on behalf of FRBK.

195.    The parties accordingly have adverse legal interests, the facts are sufficiently concrete to allow for conclusive legal judgment, and the judgment will be useful to the parties in defining the scope of their authority to act on behalf of the corporation.

## COUNT VI
## APPOINTMENT OF A CUSTODIAN PURSUANT TO 15 PA. C.S. § 1767(a)(3)

196.    Plaintiffs repeat and incorporate all of the foregoing allegations.

197.    Upon the application of any shareholder, 15 PA. C.S. § 1767(a)(3) allows the court to appoint one or more persons to be custodians of and for any business corporation when it appears that "the conditions specified in section 1981(a)(1), (2) or (3) (relating to proceedings upon application of shareholder or director), other than that it is beneficial to the interests of the shareholders that the corporation be wound up and dissolved, exist with respect to the corporation."

198.    The conditions specified in 15 PA. C.S. § 1981(a)(1), (2) and (3) are present here.

199.    The acts of the Madonna Faction, are illegal, oppressive or fraudulent. The Madonna Faction has acted to consolidate power to further its members' self-interests by purporting to cause FRBK to: (i) issue the May Press Release, (ii) terminate Mr. Hill's status as chairman of the Board, (iii) terminate certain executives director status on the Bank, (iv) appoint Ms. Jacobs as corporate secretary, (v) commit FRBK to proxy solicitation activities in

contravention of the law, and (vi) other unauthorized acts.

200.     The Madonna Faction has misapplied or wasted FRBK resources in issuing the baseless March 4 Press Release, which resulted in the Norcross Litigation, the Driver Litigation, and the Crowe investigation, all of which has caused FRBK to incur considerable expenses in attorneys' fees and other costs. The Madonna Faction has also misapplied or wasted FRBK resources in causing FRBK to make unauthorized proxy solicitations.

201.     Finally, through the Madonna Faction's unwillingness to act in accordance with its members' fiduciary duties in defending FRBK from the ongoing Driver litigation, the Board is currently deadlocked with the threat that the Driver litigation could cause irreparable injury to FRBK.

202.     Therefore, for the foregoing reasons, Plaintiffs respectfully request that the court appoint one or more custodians to manage the affairs of FRBK pending the outcome of this litigation.

## COUNT VII
### VIOLATION OF THE FEDERAL PROXY LAWS (SECTION 13(d) and RULE 13d-3 UNDER THE SECURITIES EXCHANGE ACT OF 1934)

203.     Plaintiffs repeat and incorporate all of the foregoing allegations.

204.     Section 13(d) of the Act, 15 U.S.C. § 78m(d)(1)(D), is a reporting provision that requires the disclosure of detailed information to the SEC through filing a Schedule 13D.  These disclosure requirements include (i) the identity and background of the filing person; (ii) the source and amount of funds used to make any purchases; (iii) the purpose of the transaction (including plans or proposals relating to any additional purchases, extraordinary corporate transactions, sales of a material amount of assets, changes in the present board or management, material changes in present capitalization or business or corporate structure, changes in charter or bylaws, causing a class of securities to be delisted or deregistered; and (iv) interests in other securities of the issuer.

15 U.S.C. § 78m(d)(1).

205.    These disclosure requirements apply when two or more persons agree to act together for the purpose of acquiring, holding, voting or disposing of equity securities of an issuer (i.e., they form a "group") for purposes of the Act.  17 C.F.R. § 240.13d-5(b)(1).

206.    Each of the Madonna Directors is a person under Section 13(d), and the Madonna Faction along with the Norcross Group and Driver constitutes a group within the meaning of Section 13(d) of the Act and the rules promulgated thereunder.

207.    The Madonna Faction has violated Section 13(d) of the Act and the rules promulgated thereunder by failing to disclose the existence of its group with Driver and the Norcross Group and their plans relative to the conduct enumerated in this Complaint, including without limitation the group's plans relative to changes in board and management, and plans and proposals relating to extraordinary corporate transactions, including the Madonna Faction's intention to force a sale of FRBK to the Norcross Group.

208.    The Plaintiffs have been damaged and irreparably harmed as a proximate result of the Madonna Faction's violations of the Act and the rules promulgated thereunder.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs, Vernon W. Hill, II, Brian Tierney, and Barry Spevak pray that judgment be entered in Plaintiffs' and FRBK's favor and against Defendants, Andrew B. Cohen, Lisa Jacobs, Harry Madonna, and Harris Wildstein for the following relief:

A.      Granting declaratory relief as specified herein, including a declaration that actions purportedly taken by the Madonna Faction on behalf of FRBK or the Board are without proper quorum were unauthorized, invalid, and void;

B.      Issuing injunctive relief prohibiting the Madonna Faction from taking any action

on behalf of FRBK or the Board or the Bank without proper authorization, including, but not limited to making changes to the FRBK Board or the Bank's board and communicating with FRBK's or the Bank's employees;

C.     Issuing injunctive relief enjoining the Madonna Faction from soliciting proxies until they have corrected their securities filings both under SEC Rules 14a-, 14a-6, and 14a-9 and under Section 13(d) of the Act and the rules promulgated thereunder by filing a corrective definitive proxy statement and correcting all prior solicitations with false information concerning FRBK or Plaintiffs and by filing appropriate disclosures, including but not limited to a Schedule 13D, giving shareholders sufficient time to absorb the corrected facts and void all proxies voted to date.

D.     Appointing one or more custodians to manage the affairs of FRBK and its Board pending the outcome of this litigation;

E.     Awarding Plaintiffs the costs, expenses and disbursements of this action, including attorneys' fees and expert fees; and

F.     Awarding Plaintiffs such other and further relief as this Court may deem just, equitable, and proper.

Dated: May 17, 2022                    Respectfully submitted,

*/s/ Carolyn P. Short*
  Carolyn P. Short, Esq. (PA ID No. 38199)
  carolyn.short@hklaw.com
  Valerie Brown, Esq. (PA ID No. 309849)
  valerie.brown@hklaw.com
  HOLLAND & KNIGHT LLP
  2929 Arch Street, Suite 800
  Philadelphia, PA 19104
  Telephone: 215.252.9553
  Facsimile: 215.867.6070

Martin L. Seidel, Esq. (NY ID No. 2393635)
*Pro Hac Vice Application To Be Filed*
martin.seidel@hklaw.com
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, NY 10019
Telephone: 212.513.3200
Facsimile: 212.385.9010

Matthew Grosack, Esq. (FL ID No. 73811)
*Pro Hac Vice Application To Be Filed*
Matthew.Grosack@hklaw.com
HOLLAND & KNIGHT LLP
701 Brickell Avenue, Suite 3300
Miami, FL 33131
Telephone: 305.789.7798
Facsimile: 305.789.7799

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that, on May 17, 2022, shortly after the filing of this Motion with the Court, the undersigned caused a true and correct copy of Plaintiffs' Verified Complaint, Motion for Temporary Restraining Order, Memorandum of Law in Support with exhibits, and proposed order to be served on the following counsel:

Counsel for Defendants Harry Madonna, Andrew Cohen, Lisa Jacobs and Harris Wildstein:

    Michael Swartz
    Schulte Roth & Zabel
    919 Third Avenue
    New York, New York 10022
    michael.swartz@srz.com

    John S. Summers
    Hangley, Aronchick, Segal, Pudlin & Schiller
    One Logan Square, 27th Floor
    Philadelphia, PA 19103
    jsummers@hangley.com

Counsel for nominal Defendant Republic First Bancorp, Inc.

    Stacey Scrivani
    Stevens & Lee
    1500 Market Street, East Tower
    18th Floor
    Philadelphia, PA 19102
    stacey.scrivani@stevenslee.com

                */s/CarolynP.Short*

                Carolyn P. Short

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| VERNON W. HILL, II,  BRIAN TIERNEY, and BARRY SPEVAK, derivatively on behalf of REPUBLIC FIRST BANCORP INC., | CIVIL ACTION NO. _____ |
| Plaintiffs, | |
| v. | |
| ANDREW B. COHEN, LISA JACOBS, HARRY MADONNA, and HARRIS WILDSTEIN, | |
| Defendants, | |
| and | |
| REPUBLIC FIRST BANCORP INC., | |
| Nominal Defendant. | |

## <u>VERIFICATION</u>

I declare under penalty of perjury that I have read the foregoing Verified Complaint, and the facts alleged therein are true and correct to the best of my knowledge.

Dated: May 17, 2022

DocuSigned by:

D90BEAA0E85B4E7...

Brian Tierney

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| VERNON W. HILL, II,  BRIAN TIERNEY, and BARRY SPEVAK, derivatively on behalf of REPUBLIC FIRST BANCORP INC., <br><br> Plaintiffs, <br><br> v. <br><br> ANDREW B. COHEN, LISA JACOBS, HARRY MADONNA, and HARRIS WILDSTEIN, <br><br> Defendants, <br><br> and <br><br> REPUBLIC FIRST BANCORP INC., <br><br> Nominal Defendant. | CIVIL ACTION NO. _____ |

## **VERIFICATION**

I declare under penalty of perjury that I have read the foregoing Verified Complaint, and the facts alleged therein are true and correct to the best of my knowledge.

Dated: May 17, 2022

*BARRY L SPEVAK*
DocuSigned by:
98A22C973C38465...

Barry L. Spevak