**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

VERNON W. HILL, II,  BRIAN
TIERNEY, and BARRY SPEVAK,
derivatively on behalf of REPUBLIC
FIRST BANCORP INC.,

        Plaintiffs,

    v.

ANDREW B. COHEN, LISA JACOBS,
HARRY MADONNA, and HARRIS
WILDSTEIN,

        Defendants,

   and

REPUBLIC FIRST BANCORP INC.,

        Nominal Defendant.

CIVIL ACTION NO. 22-cv-1924

**SUPPLEMENTAL MEMORANDUM OF LAW IN FURTHER
SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY
<u>RESTRAINING ORDER AND PRELIMINARY INJUNCTION</u>**

## TABLE OF CONTENTS

**Page**

A.  THIS COURT HAS JURISDICTION OVER ALL OF PLAINTIFFS' CLAIMS....................................3

    1.  Plaintiffs' Federal Securities Claims Are Meritorious..............................................3

        i   Plaintiffs Adequately Plead Violations of Section 13(d)............................3
        ii  Plaintiffs Adequately Plead Violations of Section 14................................4

B.  THE MADONNA FACTION CANNOT MAKE UP A QUORUM OF THE BOARD. ...........................7

    1.  Five Directors - a Majority of the Eight Director Positions on FRBK's Board - Is Required for a Quorum under the FRBK By-Laws...........................................8

    2.  Only the Chair or a Board Majority Can Convene a Special Meeting. .................10

C.  THE MADONNA FACTION'S CHANGE-OF-CONTROL COUP ATTEMPT IS ULTRA VIRES........11

D.  FRBK WILL SUFFER IRREPARABLE HARM IF THE MADONNA FACTION IS NOT IMMEDIATELY ENJOINED. ...........................................................................................17

**CONCLUSION** ...........................................................................................................**22**

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Avien, Inc. v. Weiss*,
    50 Misc. 2d 127, 269 N.Y.S.2d 836 (Sup. Ct. 1966) ................................................9

*In re Bank of Am. Corp. Sec., Deriv., & ERISA Litig.*,
    757 F. Supp. 2d 260 (S.D.N.Y. 2010) .....................................................................7

*Bentas v. Haseotes*,
    769 A.2d 70 (Del. Ch. 2000) .................................................................................17

*Burton v. Lithic Mfg. Co.*,
    73 Or. 605 (1914) ...................................................................................................9

*Butler v. Provident Mut. Life Ins. Co.*,
    43 Pa. D. & C. 4th 565 (Com. Pl. 1999) ...........................................................20, 21

*California Democratic Party v. Jones*,
    530 U.S. 567, 120 S. Ct. 2402, 147 L. Ed. 2d 502 (2000) ......................................17

*Canadian Javelin Ltd. v. Brooks*,
    462 F. Supp. 190 (S.D.N.Y. 1978) ..........................................................................6

*Cap. Real Est. Invs. Tax Exempt Fund Ltd. P'ship v. Schwartzberg*,
    917 F. Supp. 1050 (S.D.N.Y. 1996) ...............................................................5, 6, 7

*Capitol First Corp. v. Todd*,
    No. CIV A 04-6439 MLC, 2006 WL 3827329 (D.N.J. Dec. 27, 2006) ...................3

*Conagra, Inc. v. Tyson Foods, Inc.*,
    708 F. Supp. 257 (D. Neb.), *vacated upon settlement*, 716 F. Supp. 428 (D.
    Neb. 1989) ..............................................................................................................6

*Crown EMAK Partners LLC v. Kurz*,
    992 A.2d 377 (Del. 2010) ......................................................................................15

*Currie v. Matson*,
    33 F. Supp. 454 (W.D. La. 1940) ............................................................................9

*In re Danaher Corp. S'holder Derivative Litig.*,
    No. 1:20-cv-02445-TNM, 2021 WL 2652367 (D.D.C. June 28, 2021) ...................7

*GlaxoSmithKline LLC v. Boehringer Ingelheim Pharms., Inc.*,
    484 F. Supp. 3d 205 (E.D. Pa. 2020) ....................................................................21

*Health and Body Store, LLC v. JustBrand Ltd.*,
    2012 WL 4006041 (E.D. Pa. Sept. 11, 2012) ........................................................18

*Jewelcor Mgmt., Inc. v. Thistle Group Holdings, Co.*,
    60 Pa. D. & C.4th 391 (Pa. Ct. Com. PL 2002) ...............................................9, 21

*Kaufman v. Cooper Cos., Inc.*,
    719 F. Supp. 174 (S.D.N.Y. 1989) ....................................................................6

*Mid-Century Ins. Co., LLC v. French*,
    412 F. Supp. 3d 511 (E.D. Pa. 2019) ...............................................................10

*Morris v. Am. Liab. & Sur. Co.*,
    322 Pa. 91, 185 A. 201 (Pa. 1936) ....................................................................8

*Nord Serv., Inc. v. Palter*,
    548 F. Supp. 2d 366 (E.D. Tex. 2008) ..............................................................8

*ODS Techs., L.P. v. Marshall*,
    832 A.2d 1254 (Del. Ch. 2003)........................................................................20

*In re ORFA Corp. of Am. (Del.)*,
    115 B.R. 799 (Bankr. E.D. Pa. 1990) ................................................................9

*Osborn ex rel. Osborn v. Kemp*,
    991 A.2d 1153 (Del. 2010) ..............................................................................8

*Parks v. Woodbridge Golf Club, Inc.*,
    CV 11-0562, 2017 WL 1133949 (E.D. Pa. Mar. 27, 2017)................................9

*Perrigo Co. v. Int'l Vitamin Corp.*,
    1:17-CV-1778, 2018 WL 4290387 (D. Del. Sept. 7, 2018)................................8

*Portnoy v. Cryo-Cell*,
    C.A. No. 3142-VCS (Del. Ch. Jan. 22, 2008) (ORDER) .....................................16

*In re Pure Res., Inc., S'holders Litig.*,
    808 A.2d 421 (Del. Ch. 2002)........................................................................20

*Putnam v. Henkel Consumer Adhesives, Inc.*,
    1:05-CV-2011-BBM, 2007 WL 9701058 (N.D. Ga. May 25, 2007) .....................8

*R.D. Hubbard v. Hollywood Park Realty Enters.*,
    1991 WL 3151 (Del. Ch. 1991) ......................................................................18

*Robbins v. Penn Ctr. House, Inc.*,
    138 A.3d 734 (Pa. Commw. Ct. 2016) ............................................................10

*Roth v. Jennings*,
  489 F.3d 499 (2d Cir. 2007)................................................................3, 4

*Scheipe v. Orlando*,
  559 Pa. 112, 739 A.2d 475 (Pa. 1999) ...................................................8

*Schultz v. Cally*,
  528 F.2d 470 (3d Cir. 1975)....................................................................7

*In re Shawe & Elting LLC*,
  No. CV 10449-CB, 2015 WL 4874733 (Del. Ch. Aug. 13, 2015), *aff'd sub
  nom.* Shawe v. Elting, 157 A.3d 152 (Del. 2017) .................................17

*Sherwood v. Ngon*,
  No. CIV.A. 7106-VCP, 2011 WL 6355209 (Del. Ch. Dec. 20, 2011) ...................................19

*Sides v. Macon Cnty. Greyhound Park, Inc.*,
  3:10-CV-895-MEF, 2011 WL 2728926 (M.D. Ala. July 13, 2011) ........................................8

*SSP Capital Partners, LLC v. Mandala, LLC*,
  715 F. Supp. 2d 443 (S.D.N.Y. 2009)......................................................8

*In re Staples, Inc. Shareholders Litig.*,
  792 A.2d 934 (Del. Ch. 2001).................................................................20

*Stoltz v. McConnon*,
  473 Pa. 157, 373 A.2d 1096 (1977) .........................................................8

*Strougo v. Hollander*,
  111 A.3d 590 (Del. Ch. 2015)................................................................10

*Taseko Mines Ltd. v. Raging River Cap.*,
  185 F. Supp. 3d 87 (D.D.C. 2016) .........................................................20

*Tomlinson v. Loew's Inc.*,
  134 A.2d 518 (Del. Ch. 1957).................................................................15

*In re Transperfect Global, Inc.*,
  No. 9700-CB, 2014 WL 6810761 (Del. Ch. Nov. 18, 2014)....................................17

*United Mine Workers of Am. v. Gibbs*,
  383 U.S. 715, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966).........................7

*Warden v. McLelland*,
  288 F.3d 105 (3d Cir. 2002)...................................................................18

*Wurtzel v. Park Towne Place Apartments Ltd. P'ship*,
  62 Pa. D. & C.4th 330 (Com. Pl. 2001)...............................................20

**Statutes**

28 U.S.C. § 1331 ..................................................................................................7

28 U.S.C. § 1367 (a) ............................................................................................7

Delaware General Corporation Law Section 223(a)(1) ...............................13, 14

Exchange Act .......................................................................................................6

Exchange Act Sections 13(d) and 14 ..................................................................3

Exchange Act Section 14(a) ...........................................................................4, 5, 7

**Other Authorities**

17 C.F.R. § 240.13d-5(b)(1) ...............................................................................3

17 C.F.R. § 240.14a–9 .........................................................................................5

17 C.F.R. §§ 240.14a-3, 240.14a-6 .....................................................................4

18B Am. Jur. 2d Corporations § 1255 ................................................................9

Hearing Tr., pp. 17–18 .......................................................................................11

Pa. Dist. & Cnty. Dec. LEXIS 157 .....................................................................9

Rule 14a-9 ............................................................................................................5

Rules 14a-3 and 14a-6 .........................................................................................4

Plaintiffs, by and through undersigned counsel, hereby submit this Supplemental Memorandum of Law in Further Support of Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction (the "**Motion**").  Doc. No. 2.  As set forth herein and in the Motion, the Madonna Faction[1] should be enjoined from further improper and *ultra vires* corporate actions, including any further efforts to fill any "vacancy" on the FRBK Board in derogation of Pennsylvania law, the FRBK By-Laws, and FRBK shareholders' rights.  In further support of their Motion, Plaintiffs respectfully state as follows:

The Madonna Faction's Opposition crystalizes their motives, their culpability, and their flagrant disregard for their fiduciary duties to or the interests of FRBK's public shareholders. Their Opposition:

- Confirms the Madonna Faction's polestar is seizing <u>control</u> of FRBK by whatever means necessary;

- Confirms that their abiding concern is avoiding liability and responsibility for their materially false and misleading March 1 Letter and Press Release.  They provide no facts or evidence to refute the falsity of that letter, the fact that they published it to convince shareholders not to support Mr. Hill's slate, and the fact that they later <u>admitted</u> the letter was factually unfounded; and

- Confirms that any reading of the Company's Articles of Incorporation and By-Laws establishes that their May 13 putsch was *ultra vires*, that the Madonna Faction lacks a quorum, and that if not stopped they will continue to take advantage of Mr. Flocco's untimely death to advance their own selfish interests.

---

[1] Capitalized terms used but not otherwise defined herein shall have the same meaning as set forth in the Motion.

Tellingly, having misled shareholders, not once but twice, the Madonna Faction's opposition is unsupported by any direct evidence that would cast doubt on, much less contradict, the evidence submitted in support of Plaintiffs' application. The Madonna Faction has been plotting their takeover since late February, but lacking the votes to force a deal with Driver and Norcross, and unable to block the re-nomination of Messrs. Hill, Spevak, and Flocco, instead used their four votes to force Mr. Hill to run the Company's slate on his own by blocking the Company from paying for, speaking in favor of, or soliciting votes for Mr. Hill and his running mates. Not content to let Mr. Hill run on his own, the Madonna Faction published the materially false and misleading March Letter to damage Mr. Hill's and his running mates' candidacy (inadvertently touching off the WilmerHale investigation and consequent delay of the Annual Meeting). Early last week, with the death of Mr. Hill's running mate, Mr. Flocco, Mr. Madonna openly bragged that he would replace Mr. Hill's running mate with a director of Mr. Madonna's choosing, remove Mr. Hill from the Company, and retake control within a week. Only this Court's timely intervention derailed this plan. The Madonna Faction's effort to impose a running mate of their choosing on Mr. Hill, just days after Mr. Flocco died, and seize control of the Board cannot be permitted.

**A.      This Court Has Jurisdiction Over All of Plaintiffs' Claims.**

        1.      <u>Plaintiffs' Federal Securities Claims Are Meritorious.</u>

Defendants' challenge to this Court's subject matter jurisdiction, based on a purported failure of Plaintiffs' federal securities law claims, is without merit. Notwithstanding the Madonna Faction's strained and often *ipse dixit* arguments to the contrary, their serial and ongoing violations of Sections 13(d) and 14 of the Exchange Act and the rules thereunder establish this Court's jurisdiction.

        *i      Plaintiffs Adequately Plead Violations of Section 13(d)*

The Madonna Faction argues that Plaintiffs failed to adequately plead the existence of a "group" for purposes of their claim under Section 13(d). Section 13(d), however, requires the disclosure of detailed information when two or more persons agree to act together for the purposes of acquiring, holding, voting or disposing of equity securities of an issuer. 17 C.F.R. § 240.13d-5(b)(1). The Madonna Faction have made no disclosures under Section 13(d), despite (i) acting in concert to unseat Mr. Hill and his running mates and force a fire sale of FRBK, and (ii) collaborating with Driver and the Norcross Group to accomplish their ends.

Whether a "group" exists for purposes of Section 13(d) is a question of fact. *Roth v. Jennings*, 489 F.3d 499, 507–08 (2d Cir. 2007) (reversing district court's dismissal for failure to plead facts supporting existence of a group); *Capitol First Corp. v. Todd*, No. CIV A 04-6439 MLC, 2006 WL 3827329, at *9 (D.N.J. Dec. 27, 2006). The "touchstone" of a group is "that the members combined in furtherance

of a common objective." *Id.* at 508.  An agreement to act as a group "may be formal or informal and may be proved by direct or circumstantial evidence." *Id.*

Taken as true, the Complaint pleads ample facts from which to infer that the Madonna Faction combined with Driver and the Norcross Group with the common purpose of advancing alternate board candidates to replace Mr. Hill and Plaintiffs and to initiate extraordinary corporate transactions. These facts include the Norcross Group's public statements of intent to solicit proxies in support of the Driver Slate, *see* (Doc. No. 1, ¶ 67), the Madonna Faction's issuance of the March Press Release, (*id.*, ¶ 72), the Norcross Group's filing of a Complaint within four days of the March Press Release, (*id.*, ¶ 86), Madonna Faction member, Mr. Cohen's, direct ties to Driver Slate member, Mr. Sinkfield, (*id.*, ¶ 58), and Driver's failed attempts at a temporary restraining order seeking to compel a shareholder meeting (*id.*, ¶¶ 112–16).  Because Plaintiffs have adequately pled the existence of a group, their Section 13(d) claim is plausible and supports this Court's subject matter jurisdiction.

ii    *Plaintiffs Adequately Plead Violations of Section 14*

Section 14(a) of the Exchange Act governs how and when proxies may be solicited.  Rules 14a-3 and 14a-6 promulgated thereunder provide in substance that no solicitation subject to Regulation 14A shall be made unless a preliminary or definitive proxy statement is filed with the Commission and each person solicited is provided with a copy concurrently with or in advance of the solicitation.  17 C.F.R.

§§ 240.14a-3, 240.14a-6; *Cap. Real Est. Invs. Tax Exempt Fund Ltd. P'ship v. Schwartzberg*, 917 F. Supp. 1050, 1059 (S.D.N.Y. 1996).  It is undisputed that no definitive proxy statement has been filed by the Madonna Faction, nor, it follows, has any such statement been provided to any recipient.

Rule 14a-9 forbids the making of any solicitation by means of any "communication . . . containing any statement, which at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact,  or which omits to state any material fact necessary in order to make the statements therein not false or misleading[.]"  17 C.F.R. § 240.14a–9. Hence, a materially false or misleading solicitation violates the Rule, provided the maker of the statement is at least negligent.  *Schwartzberg*, 917 F. Supp. at 1062.  Plaintiffs allege specific facts to support multiple knowingly false statements by Defendants in the Press Releases.

Defendants' entire challenge to the Section 14 claim appears to be that the Press Releases do not constitute "solicitations" under Section 14(a) based on a rigid and formalistic view of what constitutes a "solicitation."  But neither the SEC nor federal courts interpret these rules so inflexibly, and instead take a pragmatic approach.  In *Schwartzberg*, the court found that the plaintiffs established violations of Section 14(a) by a stockholder through the issuance of press releases that, *inter alia*, contained: "sharp criticism" of the company's principals, made false statements

about the company, alleged self-dealing by the principals, and suggested that the principals sought to conceal important transaction-related information from stockholders.  917 F. Supp. at 1059.  The court reasoned that these actions "patently were designed to influence [stockholders] to vote against" the principals' proposed plan at an upcoming meeting.  *Id.*  Accordingly, the defendant's press releases "easily met" the definition of proxy solicitations for purposes of the Exchange Act, and their issuance without a definitive proxy statement on file constituted a clear breach of the proxy rules.  Other federal authorities are in accord.[2]

Here, the allegations relating to the Press Releases also "easily meet" the definition of solicitation for purposes of the Exchange Act, because they "patently [are] designed to influence" stockholders at the next FRBK annual meeting, were issued when no definitive proxy statement was on file, and contain materially false information made knowingly, including "sharp criticism" of the Incumbent Directors, allegations of self-dealing by the Incumbent Directors, and a call, at least implicitly, to vote against the Incumbent Directors' proposals at the annual meeting. (Doc. No. 1, ¶¶ 72–84, 129–35); *compare* Schwartzberg, 917 F. Supp. at 1059.  This conclusion is bolstered by Defendants' statement that the March Press Release was

---

[2] *See Kaufman v. Cooper Cos., Inc*., 719 F. Supp. 174, 185 (S.D.N.Y. 1989) (press release that spoke critically of incumbent management and gave reasons for formation of opposition, taken in context, was a step in a chain of communications that ultimately would seek proxies for upcoming annual meeting); *Canadian Javelin Ltd. v. Brooks*, 462 F. Supp. 190 (S.D.N.Y. 1978) (mailings including articles unfavorable to management made during proxy fight constituted solicitations); *Conagra, Inc. v. Tyson Foods, Inc*., 708 F. Supp. 257, 268–69 (D. Neb.), *vacated upon settlement*, 716 F. Supp. 428 (D. Neb. 1989) (granting preliminary injunction to enjoin further violations of the proxy rules based on prior press releases violating same).

issued in the hope of bringing shareholder "pressure," *viz.* the threat of a vote, to bear. (Doc. No. 10, p. 24). Under *Schwartzberg* and the authorities above, Plaintiffs have stated a valid claim for violation of Section 14(a), which provides a basis for jurisdiction in this Court.

Because Plaintiffs plead valid securities laws violations, this Court has subject matter jurisdiction over this case.[3]

## B.   The Madonna Faction Cannot Make Up a Quorum of the Board.

The Madonna Faction's contention that their group of four can make up a quorum of directors at a Board meeting and conduct Board business is wrong. First, FRBK's By-Laws clearly state that a quorum of the <u>entire</u> Board – meaning a majority of all eight of the Board's seats, regardless of any vacancies – is required to conduct Board business. And second, the Madonna Faction does not even have the power to <u>convene</u> a Board meeting, much less conduct business at one. Only the Board Chair or a majority of the Board (again, meaning all eight of the Board's seats, regardless of vacancies) can call a special Board meeting. The Madonna Faction's

---

[3] In addition, the Court has supplemental jurisdiction over Plaintiffs' related state law claims. Federal courts may hear state law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367 (a). For state law claims to be heard along with federal claims they must "derive from a common nucleus of operative fact." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966). Whether or not to exercise supplemental jurisdiction is within the discretion of the district court. *Schultz v. Cally*, 528 F.2d 470, 476 (3d Cir. 1975); *cf. In re Bank of Am. Corp. Sec., Deriv., & ERISA Litig.*, 757 F. Supp. 2d 260, 334 n.17 (S.D.N.Y. 2010) ("Given my conclusion above that the Derivative Plaintiffs have stated a claim on certain of their Section 14(a) claims, I will exercise supplemental jurisdiction over their state law claims.") (citations omitted); *In re Danaher Corp. S'holder Derivative Litig.*, No. 1:20-cv-02445-TNM, 2021 WL 2652367, at *63 n.4 (D.D.C. June 28, 2021), ("The Court has federal question jurisdiction over the § 14(a) claim, 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claims, *id.* § 1367.").

first attempt at such a meeting, where they purported to oust Mr. Hill as Chair and replace him with Mr. Madonna, was an unlawful *ultra vires* act.

> 1. <u>Five Directors - a Majority of the Eight Director Positions on FRBK's Board - Is Required for a Quorum under the FRBK By-Laws.</u>

A majority of the total number of FRBK's eight directorate seats is required to constitute a quorum.  The By-Laws define a quorum as "a majority of the members [of] the <u>entire</u> Board of Directors[.]"  By-Laws, Art. II, § 15 (emphasis added).[4]  The Pennsylvania Supreme Court has held that the words "entire board" signal intent to derogate from a simple majority of those voting or "in office."  *Scheipe v. Orlando*, 559 Pa. 112, 117, 739 A.2d 475, 477 (Pa. 1999) (reading "entire board" provision any other way would make it surplusage); *Stoltz v. McConnon*, 473 Pa. 157, 160–61, 373 A.2d 1096, 1097 (1977) (using words "entire board" to distinguish from concept of a majority of those voting).

---

[4] The By-Laws literally state: "a majority *or* the entire Board of Directors[.]"  Art. II, § 15 (emphasis added).  As the Court observed during the hearing on the Motion, the "or" language "makes no sense" and is a clear scrivener's error, which federal courts decline to enforce.  *See* May 17, 2022 Tr. 5:1; *see also Putnam v. Henkel Consumer Adhesives, Inc.,* 1:05-CV-2011-BBM, 2007 WL 9701058, at *2 (N.D. Ga. May 25, 2007) (stating "the court will not stubbornly press obvious typos or harmless technical errors against any party"); *Sides v. Macon Cnty. Greyhound Park, Inc.,* 3:10-CV-895-MEF, 2011 WL 2728926, at *4 (M.D. Ala. July 13, 2011) ("The glaring typo in the first sentence is an obvious error. So obvious that it does not in any way obscure the obvious meaning of the sentence or the nature of the agreement between the parties."); *SSP Capital Partners, LLC v. Mandala, LLC*, 715 F. Supp. 2d 443, 449 (S.D.N.Y. 2009) ("It is obvious that this argument, which is premised on the absence of a period, seeks to make much ado about nothing more than a 'typo.'").  Such a statement would be redundant, as the Board obviously is presumed to be able to take action by unanimous consent, and there would be no need to specify their ability to do so in the By-Laws. Such language would be surplusage.  *See, e.g.*, *Nord Serv., Inc. v. Palter*, 548 F. Supp. 2d 366, 377 (E.D. Tex. 2008) (holding "[a] corporation's Board of Directors can act by unanimous consent."); *Perrigo Co. v. Int'l Vitamin Corp.*, 1:17-CV-1778, 2018 WL 4290387, at *4 (D. Del. Sept. 7, 2018) ("We will read a contract as a whole and we will give each provision and term effect, so as not to render any part of the contract mere surplusage."); *Morris v. Am. Liab. & Sur. Co.*, 322 Pa. 91, 94, 185 A. 201, 202 (Pa. 1936) (holding "it is a well-settled rule of construction that no word in a contract is to be treated as surplusage or redundant if any reasonable meaning consistent with the other parts can be given to it."); *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010) (same).

In designating a majority of the total number of Board seats for a quorum, FRBK aligned its By-Laws with Delaware law, America's preeminent corporate jurisdiction,[5] and also "the generally-recognized law of all American jurisdictions," which holds "that a majority of the total directorships, as opposed to merely directorships filled[,]" is required for a quorum to transact Board business. *In re ORFA Corp. of Am. (Del.)*, 115 B.R. 799, 803–04 (Bankr. E.D. Pa. 1990); *see also* 2 Fletcher Cyc. Corp. § 419 ("[V]acancies in the board reducing the number to less than a quorum of the number fixed . . . preclude action by the remaining directors to fill the vacancy.");[6] 18B Am. Jur. 2d Corporations § 1255 ("[W]here the corporate charter or bylaws prescribe a definite number of directors and a majority is to constitute a quorum, a majority of the entire number of authorized directors is necessary to constitute the quorum, notwithstanding vacancies on the board."); *accord Avien, Inc. v. Weiss*, 50 Misc. 2d 127, 131, 269 N.Y.S.2d 836, 840 (Sup. Ct. 1966); *Burton v. Lithic Mfg. Co.*, 73 Or. 605, 609 (1914); *Currie v. Matson*, 33 F. Supp. 454, 457 (W.D. La. 1940).

The soundness of Plaintiffs' reading is bolstered by familiar canons of statutory and contract interpretation, which apply to the interpretation of corporate

---

[5] Pennsylvania courts routinely look to Delaware corporate law decisions for guidance and as persuasive authority. *See, e.g., In re Portec Rail Prods.*, Cons. No. 10-3547, 2010 Pa. Dist. & Cnty. Dec. LEXIS 157, at *26 (C.P. Ct. Allegheny Apr. 21, 2010) (citing Delaware law as persuasive authority); *Jewelcor Mgmt., Inc. v. Thistle Group Holdings, Co.*, 60 Pa. D. & C.4th 391, 399 (Pa. Ct. Com. PL 2002) (citing to Delaware decisional law on the issue of movement of shareholder meetings).

[6] "Fletcher's encyclopedia on corporate law is often cited by the Third Circuit and is a reputable source." *Parks v. Woodbridge Golf Club, Inc.*, CV 11-0562, 2017 WL 1133949, at *3 n.4 (E.D. Pa. Mar. 27, 2017).

bylaws.  *See Strougo v. Hollander*, 111 A.3d 590, 597 (Del. Ch. 2015) ("[T]he rules that govern the interpretation of statutes, contracts, and other written instruments apply to the interpretation of corporate charters and bylaws."); *Robbins v. Penn Ctr. House, Inc.*, 138 A.3d 734, 741 (Pa. Commw. Ct. 2016).  Elsewhere in FRBK's By-Laws, when designating the voting threshold to take action, the By-Laws refer, *inter alia*, to: "a majority of the directors <u>then in office</u>," By-Laws, Art. II, § 2 (emphasis added), "a majority of the Board of Directors <u>then in office</u>," *id*, § 7 (emphasis added), and "a majority of the directors <u>present</u>," *id*, § 16 (emphasis added).  When the drafter "uses certain language in one part of the [bylaws] and different language in another, the court assumes different meanings were intended."  *Mid-Century Ins. Co., LLC v. French*, 412 F. Supp. 3d 511, 516 (E.D. Pa. 2019).  The drafters of the By-Laws knew how to say something different from "entire board" when they meant to permit action by a majority of the directors then serving.  Plainly, given the longstanding Pennsylvania interpretation of "entire board" and the unbroken century of corporate governance precedent interpreting quorum by-laws to count vacant seats, the only conclusion is that a quorum here requires five seats. Any attempted action by a lesser faction is *ultra vires* as a matter of law.

    2.   <u>Only the Chair or a Board Majority Can Convene a Special Meeting.</u>

FRBK's By-Laws allow for just two ways to call a special meeting of the directors, such as would be required to fill an inter-term vacancy or to remove

directors: (1) when called by the Chairman, or (2) when called by the majority of the Board.  By-Laws, Art. II, § 10.  A "majority of the Board" – not limited to those "then in office" or "present" at a meeting – consists, as discussed above, of at least five of the eight directorships.

**C.      The Madonna Faction's Change-of-Control Coup Attempt Is *Ultra Vires*.**

The Madonna Faction freely admit that they want to convene Board meetings to remove Mr. Hill as a director and fill vacant Board seats (among other things). *See* (May 17, 2022 Hearing Tr., pp. 17–18).  They do not have the power to do so.

Only the Board Chair or a majority of the Board can convene a special Board meeting, whether to remove a director, fill a vacancy or for any other purpose.  The Madonna Faction knows this.  That is why their first move, within hours of learning of Mr. Flocco's death, was to try to replace Mr. Hill with Mr. Madonna as Chair of the Board.  Their attempt to do so, however, at a meeting that neither the Board Chair (Mr. Hill) nor a majority of the eight-seat Board had convened, was unlawful.  Mr. Hill was, and still is, Chairman of the Board of FRBK.  Neither Mr. Hill nor a majority of the Board has called for a Board meeting to fill the vacant Board seat or vote on removing Mr. Hill (or anyone else) from the Board.

Moreover, even at a properly called special meeting, a quorum of at least five directors is required to transact business.  By-Laws, Art. II, § 15.  The provision in FRBK's By-Laws regarding vacancies does not change that requirement so long as

a quorum <u>can</u> be achieved.  Article II, Section 7 provides, in relevant part:

> **"Vacancies**. Any vacancies in the Board of Directors, whether arising from death, resignation, removal or any other cause except an increase in the number of directors, shall be filled by a <u>vote</u> of the majority of the Board of Directors then in office <u>even though that majority is less than a quorum</u>. A majority of the entire Board <u>may</u> fill a vacancy that results from an increase in the number of directors. <u>In the event that at any time a vacancy exists in any office of a director that may not be filled by the remaining directors, a special meeting of the shareholders shall be held as promptly as possible and in any event within sixty (60) days, for the purpose of filling the vacancy or vacancies</u> . . . .

By-Laws, Art. II, § 7 (emphasis added).

The Madonna Faction would have this Court read the first sentence of Section 7 above, regarding filling vacancies by a vote of the majority of the Board of Directors "then in office," to mean that a faction of directors who comprise less than a quorum of the Board can install new directors <u>without a vote ever being taken at a properly noticed Board meeting</u>, even when the Company (a) has enough directors in office to make up a quorum and (b) is fully capable of holding a proper Board meeting to address the vacancy.  That is not the purpose of Section 7.  The Madonna Faction's interpretation would deprive duly elected members of the Board of the opportunity to participate in a crucial decision affecting FRBK corporate governance.

In reality, the first sentence of Section 7 is an "escape valve" clause, which allows for the filling of vacancies in a scenario - not present here - in which the Board is <u>incapable</u> of achieving the quorum necessary to convene a Board meeting

12

to vote on a vacancy (if the Board chair's seat is vacant, for example) or conduct Board business (because there are too many vacant seats).

Read in its entirety, Section 7 provides for all scenarios in which a vacancy may need to be filled. If the Board resolves to increase the number of directors pursuant to Article II, Section 2 of the By-Laws, a majority of the entire Board can then fill the newly created seats – by voting at a properly noticed Board meeting at which a quorum is present. If there is a vacancy but there are still enough directors to make up a quorum, then a majority of directors then in office can fill vacant seats – by voting at a properly noticed Board meeting at which a quorum is present. If there is a vacancy and there are not enough directors on the Board to make up a quorum, such that a Board meeting cannot properly be held, then the "escape valve" language in the first sentence of Section 7 kicks in: in that instance, a majority of the directors in office can vote to fill vacant seats, even though they are unable to convene a quorum to conduct a Board meeting in accordance with FRBK's By-laws. And finally, if the remaining directors are unable to fill a vacancy (such as, for example, in the case of a true deadlock), then the matter must be taken up at a special shareholder meeting to be convened within sixty days of the vacancy.

Section 7's "escape valve" provision echoes Section 223(a)(1) of the Delaware General Corporation Law, which provides that, unless otherwise provided in a corporation's certificate of incorporation or bylaws, vacancies and newly created

13

directorships may be filled by a majority of the directors then in office, although less than a quorum.  8 Del. C. § 223(a)(1).  Courts construing that statutory provision consistently acknowledge it is intended only to prevent paralysis where a quorum is not achievable, not to permit a rump faction to use a vacancy to seize power.

In *Applied Energetics, Inc. v. Farley*, for example, the court considered a circumstance in which the sole director on a three-seat board purported to issue to himself additional shares of common stock and to grant himself an annual salary. 239 A.3d 409, 412–13 (Del. Ch. 2020).  The two other directors had submitted their resignations, but the board had failed to follow applicable corporate governance procedures, and the court found that the resignations were ineffective.  *Id.* at 417. Pursuant to the Delaware statute at issue, "if the number of directors in office is less than the number of directors necessary for a quorum, then the directors in office cannot take action at a meeting."  *Id.* at 426.  To address the "resulting risk of deadlock," the Court found, "Section 223(a)(1) of the DGCL" which is analogous to the relevant portion of Art. II, Section 7 of the By-Laws, "authorizes 'a majority of the directors then in office, although less than a quorum' or 'a sole remaining director' to fill vacancies."  *Id.* The court concluded that this "escape valve" situation, under which the sole director could have acted unilaterally, was not triggered because the board as constituted only had three seats, a quorum was possible, and the vote of a single director on a three-seat board was not a quorum.

*Id.* at 413; *see also Tomlinson v. Loew's Inc.*, 134 A.2d 518, 523 (Del. Ch. 1957) (analyzing similar bylaws with "although less than a quorum" language and holding that provision applied only when it was not possible to convene a quorum; since the new directors in *Tomlinson* were appointed at a meeting without a quorum, they were not validly selected).

Here, a quorum of the FRBK Board remains five.[7]  This is not a situation where the Board <u>cannot</u> convene a quorum.  The first sentence of Art. II, Section 7 of the By-Laws, which is intended to address situations of paralysis, is therefore inapplicable.  Instead, here, a vacancy "may not be filled by the remaining directors," except at a duly called meeting where a quorum is present.  By-Laws, Art. II, § 7. The only alternative is to present the matter to the shareholders at a special meeting. *Id.*  This Court should reject any construction that permits the Madonna Faction to side-step both the quorum requirement and FRBK's shareholders.

The Madonna Faction's interpretation would also improperly bypass FRBK's Nominating Committee and nullify an expressly stated primary purpose of that committee, which is to "provide oversight on the broad range of issues surrounding the composition and operation of the [Board], including identifying individuals qualified to become Board members, recommending to the Board nominees for the

---

[7] *See, e.g., Crown EMAK Partners LLC v. Kurz*, 992 A.2d 377, 400 (Del. 2010) (determining a quorum based on the number of directorships rather than directors then in office).

next annual meeting of shareholders, <u>and to fill vacancies occurring between annual shareholder meetings</u>[.]" *See* FRBK Nominating Committee Charter (a true and accurate copy of which is attached hereto as "**Exhibit A**") (emphasis added). Section 7 of FRBK's By-Laws need not, and should not, be construed to deprive the Nominating Committee of one of its primary responsibilities.

The Madonna Faction's repeated efforts to knee-cap or supplant the Hill Slate highlight the need for injunctive relief.   After the Nominating Committee recommended nomination of Messrs. Hill, Flocco, and Spevak rather than a deal with Driver or the Norcross Group, the Madonna Faction used its four votes to block routine resolutions authorizing FRBK to devote resources to campaigning for Mr. Hill and his running mates.  *See, e.g., Portnoy v. Cryo-Cell*, C.A. No. 3142-VCS (Del. Ch. Jan. 22, 2008) (ORDER) (specifying that "the management slate shall pay . . . their own proxy solicitation costs in connection with the Special Stockholders' Meeting").   Then, having driven Mr. Hill and his running mates to run their own campaign, the Madonna Faction sought to drive votes away with their ham-handed, materially misleading March letter.   With Mr. Flocco's untimely death, any replacement director would fill out the remaining weeks of Mr. Flocco's term and join Mr. Hill's slate at the upcoming annual meeting.   Normally, the Nominating Committee would identify a replacement to be approved by the Board.   Letting the Driver-aligned Madonna Faction force their chosen nominee onto the Hill Slate,

however, would be tantamount to letting the Republican Party select their Democratic opponent or vice versa.[8]  *See, e.g., California Democratic Party v. Jones*, 530 U.S. 567, 572, 120 S. Ct. 2402, 2407, 147 L. Ed. 2d 502 (2000) (striking down a state law that created the "prospect of having a party's nominee determined by adherents of an opposing party.").[9]

**D.     FRBK Will Suffer Irreparable Harm if the Madonna Faction is Not Immediately Enjoined.**

An injunction and restraining order are warranted here. Not only does the Madonna Faction lack authority to act under the By-Laws, thus making all of their actions irreparably harmful to FRBK, but, through their actions, they are also violating and causing FRBK to violate federal law.   The Madonna Faction's disregard of FRBK's corporate governance requirements will result in shareholder disenfranchisement and irreparable harm.   As demonstrated by the illegitimate demotion of Mr. Hill and hasty appointments of Mr. Madonna and Ms. Jacobs, the Madonna Faction clearly intends to proceed with their plan to seize control of FRBK

---

[8] If this Court finds that an injunction is not warranted (although it is) this Court should appoint a custodian to assist in the selection of a replacement director to finish Mr. Flocco's term and run with Mr. Hill and Mr. Spevak at the upcoming election.  The Custodian could then be empowered to break any subsequent deadlocks on the Company's eight member board. *Bentas v. Haseotes*, 769 A.2d 70, 74 (Del. Ch. 2000) (concluding a failure to elect less than all of the directors is sufficient to appoint a custodian). "The proper construction is that § 226(a)(1) empowers the Court to appoint a custodian where, because of a deadlock, the shareholders fail to elect a sufficient number of directors to constitute a quorum of the board." *Id.*  Indeed, a court sitting in equity is empowered to appoint a custodian to break a deadlock that would otherwise renders the board incapable of acting." *Cf.  In re Shawe & Elting LLC*, No. CV 10449-CB, 2015 WL 4874733, at *1 (Del. Ch. Aug. 13, 2015), *aff'd sub nom.* Shawe v. Elting, 157 A.3d 152 (Del. 2017) (recognizing the court's power to appoint a custodian to resolve irretrievable deadlocks); *In re Transperfect Global, Inc.,* No. 9700-CB, 2014 WL 6810761 (Del. Ch. Nov. 18, 2014).

[9] The logical solution would be for the Nominating Committee to select a replacement candidate for Mr. Flocco, recommended by Messrs. Hill and Spevak, and as an alternative to a custodian to break Board ties, for the Court to order the parties to retain a Board search firm to add an independent ninth director.

and its operations, remove Mr. Hill from the Board, and appoint new directors – who presumably will then vote in accordance with the Faction's interests – regardless of any quorum requirements in the By-Laws. *See* May 17, 2022 Tr. 9:20–10:5.

The Madonna Faction has already flagged their eagerness to sell FRBK, lining their own pockets and those of certain privileged investors (namely, Driver and Norcross, who are actively supporting the Madonna Faction), to the detriment of most FRBK shareholders. Such changes to corporate structure, ranging from disruption of a board's composition to loss of ownership of a company, constitute irreparable harm warranting injunctive relief. *Health and Body Store, LLC v. JustBrand Ltd.*, 2012 WL 4006041, at *1, 4–5 (E.D. Pa. Sept. 11, 2012) (concluding that "Defendants likely breached their fiduciary duties by excluding . . . access to the Websites, and that irreparable harm would likely result from this continued exclusion" as well from the fact that the plaintiff's entire business and customer base were in defendant's sole and exclusive control).[10]  Crucially, once the planned sale is consummated, it will be far more difficult for the Court to unwind that transaction and money damages will not compensate the duly-elected directors of FRBK, and the shareholders that elected them, for the loss of their right to control their company.

---

[10] *See also Warden v. McLelland*, 288 F.3d 105, 111 (3d Cir. 2002) (finding that trustees of a trust-shareholder in corporation sufficiently alleged irreparable harm to corporation stemming from "squeeze out" merger and change in corporate structure orchestrated by other shareholders); *R.D. Hubbard v. Hollywood Park Realty Enters.*, 1991 WL 3151, at *5 (Del. Ch. 1991) (stating that Board's "thwarting shareholders' voting rights" to choose a board of directors by blocking the nomination of any competing slate could constitute irreparable harm).

In addition, the Madonna Faction have already admitted to FRBK's auditors – in documents they tried to keep confidential – that their highly publicized accusations of self-dealing and other misconduct by Plaintiffs are **false**. <u>The Madonna Faction provided no affidavits, verified allegations, or any other evidence in this litigation to the contrary</u>.

Indeed, the Madonna Faction is actively trying to force a shareholder meeting, at which new directors will be elected, before the independent investigation into these allegations can be completed and before FRBK and Plaintiffs can solicit proxies. The truth regarding the allegations (that were made and publicized by the Madonna Faction) concerning Plaintiffs – two of whom are on the Board-approved slate – is highly material to the forthcoming proxy vote. Moreover, due to federal securities regulations, the Board-approved slate will be unable to solicit proxies, thereby disenfranchising all shareholders wishing to support the Board slate who cannot attend the annual meeting in person.[11]  Forcing shareholders to vote for

---

[11] For the Court's information, Mr. Flocco's unfortunate passing does nothing to restrict Plaintiffs' ability to advance their slate with a replacement proposed director. By way of example, in *Sherwood v. Ngon*, No. CIV.A. 7106-VCP, 2011 WL 6355209, at *1 (Del. Ch. Dec. 20, 2011), the Delaware Chancery court granted a TRO enjoining a scheduled annual shareholder meeting so that one of the directors could advance his own slate of nominees, reasoning that it was necessary that shareholders receive a fair opportunity to vote. *Id.* at *1. The director had previously been on the company's slate of nominees, but was removed only days before the annual meeting. *Id.* at *8. The company's board argued that its  advance notice bylaws prevented the recently removed director from nominating a different slate. *Id.* The court, however, rejected this argument because "our corporate law emphatically vests that power in the shareholder franchise" and, without pausing the meeting date, the director who changed his slate would not be able to conduct an effective proxy contest. *Id.* at *1, 9. On these facts the *Sherwood* court held, "[i]n these circumstances, there may be some merit to the equities claimed by both Plaintiffs and Defendants, but the balance of the equities as between Defendants and ChinaCast's shareholders tips decidedly in favor of granting the TRO." *Id.* at *14. These same equites would therefore balance in favor of allowing Plaintiffs' modified slate with a different proposed director in Mr. Flocco's place be put to FRBK shareholders for vote.

directors without full information or material disclosures, and denying them the right to vote if they cannot vote in person, constitutes additional harm that cannot be addressed by money damages.[12]   Generally, disclosure deficiencies cannot be remedied effectively by "after-the-fact damages." *In re Staples, Inc. Shareholders Litig.*, 792 A.2d 934, 960 (Del. Ch. 2001).  Thus, "[i]t is appropriate for the court to address material disclosure problems through the issuance of a preliminary injunction that persists until the problems are corrected." *Id.*  Pennsylvania courts find "[t]his rationale is consistent with decisions in Delaware enjoining companies to make full and fair disclosures to allow shareholders to make informed and uncoerced decisions between two alternatives."[13]

Finally, the Madonna Faction has demonstrated their intent to publicly damage Mr. Hill's reputation, which will impact his chances of successfully winning the proxy election.  Money damages cannot remedy the reputational damage that will come to Mr. Hill, the duly elected chairman of FRBK, if he is fired as CEO and removed as chairman (as the Madonna Faction intends). *See GlaxoSmithKline LLC*

---

[12] *ODS Techs., L.P. v. Marshall*, 832 A.2d 1254, 1262-63 (Del. Ch. 2003); *see also, e.g., In re Pure Res., Inc., S'holders Litig.*, 808 A.2d 421, 452 (Del. Ch. 2002) (enjoining tender offer before shareholders could vote due to likelihood of irreparable harm stemming from misleading disclosure of material facts); *Taseko Mines Ltd. v. Raging River Cap.*, 185 F. Supp. 3d 87, 93 (D.D.C. 2016) ("An uninformed shareholder vote is often considered an irreparable harm, particularly because the raison d'etre of many of the securities laws is to ensure that shareholders make informed decisions."); *Butler v. Provident Mut. Life Ins. Co.*, 43 Pa. D. & C. 4th 565, 573 (Com. Pl. 1999) (finding that corporation's material omissions and misleading statements regarding changes to the corporate structure immediately and irreparably harmed the policyholders' ability to make an informed vote).

[13] *Wurtzel v. Park Towne Place Apartments Ltd. P'ship*, 62 Pa. D. & C.4th 330, 345–46 (Com. Pl. 2001) (citing *Sealy Mattress Co. of N.J. v. Sealy Inc.*, 532 A.2d 1324, 1340-41 (Del. Ch. 1987) (enjoining cash-out merger because "plaintiffs have not received sufficient information to make an informed decision among the available alternatives . . . . In this case the inability to make that choice constitutes irreparable harm. . . .").

*v. Boehringer Ingelheim Pharms., Inc.*, 484 F. Supp. 3d 205 n.8 (E.D. Pa. 2020) (stating "[h]arm to reputation . . . can constitute irreparable injury because it is 'virtually impossible to quantify in terms of monetary damages.'") (quoting *Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 198 (3d Cir. 2014)).  Nor can they remedy the damage to the shareholders' ability to reelect Mr. Hill, to whom they have entrusted the company and who is the person they wish to lead the company in the future.[14]  Nor is it feasible or possible to reverse these actions after they have occurred, because every additional attack on Mr. Hill adversely affects his chances at reelection.[15]

Here, it would be extremely difficult if not impossible to nullify an improper election after it has occurred, unwind transactions entered into by invalidly-elected directors, or order a do-over election that would somehow be unaffected by the reputational damage currently being sustained by certain Directors.  Plaintiffs have thus shown imminent irreparable harm that warrants injunctive relief.[16]

---

[14] *Butler v. Provident Mut. Life Ins. Co.*, 43 Pa. D. & C.4th 565, 573 (Com. Pl. 1999) (finding that corporation's material omissions and misleading statements regarding changes to the corporate structure immediately and irreparably harmed the policyholders' ability to make an informed vote).

[15] *Jewelcor Mgmt., Inc. v. Thistle Grp. Holdings*, Co., 60 Pa. D. & C.4th 391 (Com. Pl. 2002) (finding that shareholder's "inability to involve itself in the corporate election process and to solicit the proxy votes of other [company] shareholders constitutes immediate and irreparable harm") (citing *Int'l Banknote Co. v. Muller*, 713 F. Supp. 612, 623 (S.D.N.Y 1989) ("Courts have consistently found that corporate management subjects shareholders to irreparable harm by denying them the right to vote their shares or unnecessarily frustrating them in their attempt to obtain representation on the board of directors.")).

[16] Practically speaking, the most efficient way to resolve this dispute would be the appointment of a ninth director to the Board to break the ongoing deadlock plaguing corporate decisions. If the shareholders are afforded this opportunity, they may well take it in order to put an ending to the ongoing stalemate. If the Madonna Faction is permitted to proceed, this sensible outcome will be foreclosed as the Madonna Faction would have already commandeered control of the company away from the shareholders in the first instance. This further highlights the need for an immediate Order enjoining the Madonna Faction.

## **CONCLUSION**

For the foregoing reasons, as well as the reasons stated on the record during the Court's May 17, 2022 hearing and in Plaintiffs' Motion, Plaintiffs respectfully request that the Court grant their Motion and all relief requested by Plaintiffs, and for any additional and further relief the Court deems just and proper.

Dated: May 24, 2022.                    Respectfully submitted,

*/s/ Carolyn P. Short*
Carolyn P. Short, Esq. (ID No. 38199)
Valerie Brown, Esq. (ID No. 309849)
Martin Seidel (*pro hac vice*
forthcoming)
HOLLAND & KNIGHT LLP
2929 Arch Street, Suite 800
Philadelphia, PA 19104
Telephone: 215.252.9553
Facsimile: 215.867.6070

*Counsel for Plaintiffs Vernon W. Hill, II, Brian Tierney, and Barry Spevak derivatively on behalf of Republic First Bancorp Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 24th day of May, 2022, the foregoing document was served via the Court's CM/ECF system on all counsel of record.


*/s/ Carolyn P. Short*
Carolyn P. Short